L. KEEVER STRINGHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17101. Promulgated April 15, 1949.

*K. V. Nicola, Esq.,* for the petitioner.
*William R. Bagby, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge:* The sole question raised by petitioner is whether he is entitled to deduct as expenses for medical care, under section 23 (x) of the Internal Revenue Code, amounts expended by him in

1944 incident to the transportation of his infant daughter to, and the cost of her maintenance at, a private boarding school in Tucson, Arizona.

Section 23 (x) permits the deduction from gross income of expenses paid during the taxable year, not compensated for by insurance or otherwise, for the medical care of the taxpayer, his spouse, or a dependent to the extent that such expenses exceed 5 per cent of the adjusted gross income.

The maximum amount which may be deducted by a taxpayer is limited to $2,500* in the case of the head of a family or a husband and wife filing a joint return, and in all other cases the maximum is fixed at $1,250.

"Medical care" is defined by section 23 (x) as follows:

* * * The term "medical care," as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance).

As the broad and comprehensive language of this section is susceptible to a variety of conflicting interpretations, we feel impelled, in order to determine the limits of its construction, to inquire into the Congressional intent which lay behind the enactment of this legislation.

Section 23 (x) was originally introduced into the Internal Revenue Code as section 127 (a) of the Revenue Act of 1942. Prior to that time Congress had never seen fit to extend the benefits of such a deduction and had long regarded such expenditures as "personal, living, or family expenses," which were expressly not deductible by virtue of section 24 (a).

The report of the Senate Finance Committee (S. Rept. No. 1631, 77th Cong., 2d sess., p. 6) expresses the fundamental purpose of section 23 (x) as follows:

This allowance is recommended in consideration of the heavy tax burden that must be borne by individuals during the existing emergency and of the desirability of maintaining the present high level of public health and morale.

This statement, construed in conjunction with the broad definition of "medical care" included in section 23 (x), would appear at first to seriously undercut the provisions of section 24 (a). However, such a result was clearly not contemplated by Congress.

In its Report No. 1631, *supra*, p. 96, the Senate Finance Committee limited its definition of "medical care" by the following statement:

* * * It is not intended, however, that a deduction should be allowed for any expense that is not incurred primarily for the prevention or alleviation of a physical or mental defect or illness.

---

*Amended by section 304, Revenue Act of 1948.

To show the relationship of section 23 (x) to 24 (a), section 127 (b) of the Revenue Act of 1942 amended section 24 (a) to read as follows:

(b) ITEMS NOT DEDUCTIBLE.—Section 24 (a) (relating to items not deductible) is amended by striking paragraph 1 and inserting in lieu thereof the following:

"(1) Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23 (x) ;".

Thus, Congress made it very clear that the benefit of the deduction it was creating for "medical expenses" was in no way to encompass items which were primarily personal living expenses. Regulations 111, section 29.23 (x)–1, promulgated pursuant to section 23 (x), adheres to this policy:

SEC. 29.23 (x)–1. MEDICAL, DENTAL, ETC., EXPENSES.—

\* \* \* \* \* \* \*

\* \* \* *Allowable deductions under section 23 (x) will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness.* Thus, payments for expenses for hospital, nursing (including nurses' board where paid by the taxpayer), medical, laboratory, surgical, dental and other diagnostic and healing services, for drugs and medical and dental supplies (including artificial teeth or limbs), and for ambulance hire and *travel primarily for and essential to the rendition of the medical services or to the prevention or alleviation of a physical or mental defect or illness, are deductible.* [Emphasis supplied.]

The Congressional intent is sufficiently evident to require the showing of the present existence or the imminent probability of a disease, physical or mental defect, or illness as the initial step in qualifying an expenditure as a medical expense. In other words, the language used in the statutory definition and the report of the Senate Finance Committee is sufficiently specific to exclude, except as to diagnosis, amounts expended for the preservation of general health or for the alleviation of physical or mental discomfort which is unrelated to some particular disease or defect.

Secondly, it is clear that a deduction may be claimed only for such expense as is *incurred primarily for* the prevention or mitigation of the particular physical or mental defect or illness.

The real difficulty arises in connection with determining the deductibility of expenses which, depending upon the peculiar facts of each case, may be classified as either "medical" or "personal" in nature. There would seem to be little doubt that the expense connected with items which are wholly medical in nature and which serve no other legitimate function in everyday life is incurred primarily for the prevention or mitigation of disease. On the other hand, it is obvious that many expenses are so personal in nature that they may only in rare situations lose their identity as ordinary personal expenses and acquire deductibility as amounts claimed primarily for the prevention or alleviation of disease. Therefore, it appears that in cases such as the

one now before us, where the expenses sought to be deducted may be either medical or personal in nature, the ultimate determination must be primarily one of fact.

Petitioner has shown to our satisfaction that there existed in his daughter a disease or illness immediately prior to his sending her to Arizona and while en route. Her poor physical condition and her susceptibility to respiratory ailments almost from the time of her birth reveal the urgency of his decision. The evidence also convinces us that petitioner's choice of action was proximately related to the particular attack of bronchitis bordering on pneumonia which was contracted by her not more than a few days before her departure and was only indirectly related to the numerous difficulties she had experienced in the past with similar illnesses. There is also evidence that the change in climate was discussed by the parents with the child's physician.

Moreover, the record does not support the slightest inference that petitioner sent his five-year-old daughter to Arizona for any purpose other than making it possible for her to recover from her then present illness. He had at that time two other children, who remained at home with the family in Cleveland. His position was such that it would have been highly impractical for him to have moved the whole family to Arizona for the benefit of one child. Little more than a week before his decision he had paid the child's tuition for the entire first term at a private school in Cleveland.

Although we do not feel that the *bona fides* of a taxpayer's motive in incurring an expense should be determinative of its deductibility, we do believe that we should accord it considerable weight.

We also believe that there existed a reasonable relation between the change in climate and the cure, mitigation, and treatment of the disease from which the child was suffering. It appears that during the subsequent months in Arizona she improved appreciably and no further hospitalization or medical services were required. In short, the record supports the conclusion that the climate had a direct and beneficial effect upon the cure and mitigation of the disease from which she was suffering, apart from the benefit acquired from the same climate by a vacationer or one suffering from a disease unrelated to or unaffected by the climate of Arizona.

It is true that petitioner did not send his child to a sanitarium. However, the mother testified that, in response to her requests, such establishments had refused to accept the child, due to the fact that she was not then suffering from an active case of tuberculosis, having only shown a positive reaction to a tuberculin test. Moreover, it would not be unusual that one sending a young child to another climate

for any considerable time, either for climatic benefits or for receiving medical services, would attempt to provide for the child's education.

The conduct of the parents and the clear showing of the relation of their course of action to the illness from which the child was suffering, together with all the other evidence herein, leads us to the conclusion that the travel expense and the cost of maintaining the child while in Arizona were expenses which were clearly incurred primarily for and essential to the cure and mitigation of the daughter's illness.

However, we believe that such amounts as are attributable to the cost of educating petitioner's child while in attendance at the school at Tucson are not deductible as "medical expense." The child's attendance at school appears to us to have been merely an additional activity, unrelated in any way to the cure or alleviation of the disease from which she was suffering.

The tuition charged by the Arizona Sunshine School for boarding students was from three to five times greater than the fee charged for the children enrolled in its day school or pre-school groups who resided at their homes. Since it is impossible from the record to accurately determine what proportion of the tuition charged by the school represented the cost of medical facilities or the child's meals and lodging, we have selected the figure of $850 of the total amount paid by petitioner to the school. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. In our opinion, this amount and the additional sum of $138.82, representing the cost of her transportation to Arizona, may properly be deducted by petitioner as medical expense. Cf. I. T. 3786, C. B. 1946-1, p. 75. These amounts, in addition to the other medical expenses allowed by respondent, are deductible by petitioner in so far as the total amount exceeds 5 per cent of his adjusted gross income and, as it appears that his wife filed a separate return in 1944, to the extent of the statutory limitation of $1,250.

From an examination of the record, it is clear that respondent questions only the right of the petitioner to deduct the expenses in issue as medical expense, and he does not make a point of the fact that some part of the outlay was to cover Genevieve's expenses during the first five months of 1945. It should also be borne in mind that our decision in this case is applicable only to the deduction sought by the petitioner in his return for the taxable year 1944 and is in no way determinative of his right to claim similar deductions in subsequent years.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HARRON, *J.*, concurs only in the result.

---

MURDOCK, *J.*, concurring: Section 23 (x) provides that the term "medical care" shall include amounts paid, *inter alia*, for the cure

or mitigation of disease. The prevailing opinion attempts to force the facts to fit those particular words, ignoring the fact that the term "medical care" also includes amounts paid for the prevention of disease. That opinion proceeds upon the unsound theory that Genevieve was sent to Tucson and kept there for over six months "primarily" to cure "the particular attack of bronchitis" which she contracted several days after November 2, 1944, and not primarily to prevent recurrence of the respiratory diseases to which she was susceptible. It states: "Moreover, the record does not support the slightest inference that petitioner sent his five-year old daughter to Arizona for any purpose other than making it possible for her to recover from her then present illness."

I disagree with that interpretation of the facts. There is no finding that the parents took the child to Arizona merely to cure her of the early November attack of bronchitis, that the attack was still in progress when she left Cleveland or when she arrived in Tucson, that any doctor was consulted in Tucson, or that "the particular attack of bronchitis" still needed curing during the following six months of her stay there. It stands to reason that she must have recovered sufficiently before they left home to lead the parents to think she was well enough to undertake the. trip. The school would not accept a child with any communicable disease. Most important, however, are the findings that the parents sought "a better winter climate," "a suitable climate," that is, a climate where Genevieve would be less likely to contract further ills than would have been the case in Cleveland. They obviously sought primarily long-range prevention, rather than merely the cure of or recovery from any recent attack of bronchitis. Every indication in the record is that the primary purpose of the parents in taking the child to and having her remain in Arizona for six months was to prevent the recurrence of those respiratory diseases to which she had been susceptible in Cleveland. They sought to prevent disease by placing her in "a better winter climate." The real question presented for decision on these facts is whether the contested expenditures were "paid for * * * prevention of disease" and were "extraordinary medical expenses deductible under section 23 (x)" rather than personal, living, or family expenses within the meaning of section 24 (a). The majority opinion avoids that question.

This is one of the first cases to be decided under section 23 (x), and care must be exercised to carry out the intent of the statute without inviting abuse. The words of section 24 (a) clearly indicate that the two sections are to be read together. Thus, a line must be drawn between living expenses which are not deductible under section 24 (a) and "extraordinary medical expenses deductible under section 23 (x)." The questions of the deductibility of expenses

where someone went permanently to Arizona to prevent illness or where someone went on a sort of vacation with general health benefit in mind are not present in this case and need not be decided at this time. At least a part of the expenses here in question represented extraordinary medical expenses as opposed to personal, living, or family expenses. The fair preponderance of the evidence is that there was a real emergency, justifying the extraordinary measures which were taken to send this child to Tucson in the hope that the climate there would prevent the recurrence of the respiratory diseases which had struck her so frequently in Cleveland. Therefore, some of the deductions claimed in this case come within section 23 (x). Expenses could have been incurred in Tucson which would not be deductible. These might include amounts paid for clothing, schooling, and any similar items not strictly for "medical care." That is, she would have some personal, living, or family expenses while there, and it was incumbent upon the petitioner to show that the expenses claimed were for "medical care." The division made in the majority opinion may approximate the correct amount.

LEECH and KERN, *JJ.*, agree with this concurring opinion.

---

DISNEY, *J.*, dissenting: The majority opinion states the conclusion that the costs of maintaining the child while in Arizona were expenses incurred primarily for and essential to the care of the child. The cost of education is denied deduction. If it is the intent of this opinion to allow deduction, under the term "medical care" as defined in section 23 (x), of personal living expenses, in the face of the provisions of section 24 (a) (1), the concept, in my opinion, is erroneous. Though the language of section 23 (x) is broad, it does not in my view permit the deduction of living expenses, merely because the individual finds living in one locality more beneficial to health than in another. As I see it, unless the expense is in addition to living expense, it may not be allowed. I would not bar expenses of maintenance in a hospital or sanitarium, staying in which is necessary for "medical care," but where such residence in hospital or sanitarium is not necessary, living expenses are, I think, not within the purview of the statute, where paid not for medical care, but merely to reside in a salubrious climate, where the individual's health is in general found to be improved. Of course, medical care or treatment reasonably includes the expenses of nursing and if, in the case of a small child such as here involved, such care was necessary because of inability of parents to be with the child, that expense should be allowed; so that if it had been shown that the Arizona Sunshine School furnished such care to the petitioner's child, and that it was essentially

care of health, I would allow the cost. But the recited facts merely show that the child attended a school, in a climate beneficial to her health, without any indication that such school attendance as such was of benefit to the child's health. In my view, therefore, the school expense should be allowed only to the extent that the school substituted for or furnished facilities reasonably within the ordinary connotation of "medical care." It may be that, because of the child being only five years old, the school did substitute the care which a nurse or attendant might have furnished. But the allowance of deduction appears not to be based on that ground, but upon the more general idea that maintaining the child in Arizona is, because of her condition of health, within section 23 (x). Such view leads toward allowance of deductions for mere living expense, never, in my opinion, intended by Congress. Section 24 (a) (1) excepts from nondeductible personal living expenses "extraordinary medical expenses deductible under section 23 (x)." This indicates to me that no substitute for ordinary living expenses should be allowed, unless they actually furnish direct medical care, such as hospital maintenance, and that expense of merely living where health is bettered, or attending school there, is not within the ambit of permissible deduction. I therefore dissent.

TURNER and HILL, *JJ.*, agree with this dissent.