FRANCES HOFFMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28212, 36225. Promulgated February 28, 1952.

*Benjamin Heller, Esq.*, for the petitioner.
*S. Jarvin Levison, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The sole question to be decided is whether the petitioner is entitled to deduct as expenses for medical care, under section 23 (x) of the Internal Revenue Code, amounts expended by her in each of the taxable years for the room and board of her son in Los Angeles, California.

Section 23 (x) permits the deduction from gross income of expenses paid during the taxable year, not compensated for by insurance or otherwise, for the medical care of the taxpayer, his spouse, or a dependent, to the extent that such expenses exceed 5 per cent of the adjusted gross income. The term "medical care" is defined by section 23 (x) as follows:

\* \* \* The term "medical care", as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance.)

The petitioner contends that the broad definition of medical care encompasses her expenditures for the board and lodging of her son in Los Angeles during the years 1946, 1947, and 1948 because, upon the advice of his physician, he had moved to Los Angeles so that he could live in a warm and even climate which he understood to be conducive to, if not necessary for, the prevention of the recurrence of rheumatic fever. Walter suffered two attacks of rheumatic fever in each of the years 1936 and 1937, from which his heart was impaired and left him

with rheumatic heart disease and mitral and aortic stenosis. The petitioner contends that the expenses in question are deductible under section 23 (x) under the rule of *L. Keever Stringham*, 12 T. C. 580, affd. per curiam 183 F. 2d 579.

The respondent contends that the expenses in question do not come within the scope of section 23 (x), but constitute personal living expenses, and as such are not deductible because of the provisions of section 24 (a) (1). He cites in support of his determinations *Edward A. Havey*, 12 T. C. 409.

It is provided in section 24 (a) (1) that "Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23 (x)" shall not be deducted from gross income, and this provision clearly indicates that section 23 (x) is to be read in conjunction with section 24 (a) (1). Where, as in this proceeding, a taxpayer seeks deduction for the expenses of meals and lodging under the claim that such expenses constitute "medical expenses" within the intendment of section 23 (x), inquiry must be made whether the expense is truly "medical expense" or is living expense. A line must be drawn between living expenses which are not deductible under section 24 (a) and "extraordinary medical expenses deductible under section 23 (x)." In this proceeding the deduction is claimed for the lodging and subsistence expenses of a dependent child who went to live permanently, more or less, in Florida, and later in California. In *L. Keever Stringham, supra*, the taxpayer's child was taken to Arizona immediately following an illness, as soon as it was feasible to make the journey, and we pointed out that

many expenses are so personal in nature that they may only in rare situations lose their identity as ordinary personal expenses and acquire deductibility as amounts claimed primarily for the prevention or alleviation of disease. Therefore, it appears that in cases such as the one now before us, where the expenses sought to be deducted may be either medical or personal in nature, the ultimate determination must be primarily one of fact.

It was noted, also, in the concurring opinion of Judge Murdock (page 587) that the question of the deductibility of expenses where someone went permanently to live in a salubrious climate in order to prevent illness was not present in the *Stringham* case and was not decided.

The question presented in this proceeding is primarily a question of fact. The evidence shows that the petitioner's son had not been ill since 1937; that he was not ill during the taxable years; and did not receive any medical attention or treatment during the taxable years. Rheumatic fever very frequently leaves the subject with rheumatic heart disease, and the attacks which the petitioner's son, Walter, suffered, had that result. Nothing in the record to the contrary, it appears that Walter will go through life afflicted with rheumatic heart

disease. The petitioner wisely followed the advice that her son leave New York City and live in a warm and equable climate. Walter's residence in Florida for 8 years, up to the fall of 1945, was beneficial; and when he was examined at the Presbyterian Hospital in New York City in June 1941 it was found that he had had no recurrence of rheumatic fever since 1937 and that although signs of mitral and aortic rheumatic disease persisted, it was inactive. No doubt his living in a warm and mild climate in Florida was largely responsible for the comparatively good health which Walter achieved.

When Walter went to Los Angeles in the fall of 1945 he immediately enrolled as a student at the University of California. He was 18 years of age, the age at which young people ordinarily enter a university if they are able to continue their education. The evidence shows that Walter did not suffer any illness in 1945, and it is presumed that he went to Los Angeles in order to enroll as a student at the University of California as well as to continue living in a mild climate.

We understand that Walter should, and probably will during the rest of his life, select a place for his continuous residence where the climate will be congenial to his impaired heart, and that he will avoid living where there are changes of temperature and the climatic conditions may impose some strain upon him.

In other words, during the taxable years petitioner's son was not ill; in fact, he appears to have been in excellent physical condition, able to attend the university where he successfully completed his studies and graduated in 1949. In June of 1941, when he last visited the clinic of the Presbyterian Hospital, "He appeared in excellent physical condition" according to the report of that hospital. Under such facts, it is concluded that the expenses in question were personal, living expenses and that they come within section 24 (a) (1) rather than section 23 (x).

If the petitioner had been able to elect to go to Los Angeles and establish a home there for her son so that he had been living with her during the taxable years, it is unlikely that the petitioner would claim deduction for his meals and lodging expenses. A taxpayer is allowed an exemption for a dependent but that is all. It is true that the petitioner is a person of modest means so that the support of a dependent child no doubt imposes some sacrifice, but that factor is immaterial. She would have the same burden of the living expenses of her son if she had maintained a home for him in California during the taxable years. The fact that she either could not or did not elect to live in California with her son is not material. The situation here is simply that her son, Walter, found living in one locality more beneficial to his health than living in the locality

where his mother lived. The provisions of section 23 (x) are broad, but they are restricted by the provisions of section 24 (a) (1) and do not apply to the facts in this proceeding.

We need not again refer to the evidence of the Congressional intent in enacting section 23 (x), other than to refer to the report of the Senate Finance Committee (S. Rept. No. 1631, 77th Cong., 2d Sess., page 6). See also *L. Keever Stringham, supra,* page 583; and *Edward A. Havey, supra,* page 411. The Commissioner in his Regulations has emphasized that:

* * * Allowable deductions under section 23 (x) will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for expenses for hospital, nursing * * *, and for ambulance hire and travel primarily for and essential to the rendition of the medical services or to the prevention or alleviation of a physical or mental defect or illness, are deductible. (Regulations 111, section 29.23 (x)–1.

In considering the above Regulation we observed in *L. Keever Stringham, supra,* page 584, "that a deduction may be claimed only for such expense as is *incurred primarily for* the prevention or mitigation of the particular physical or mental defect or illness." In this proceeding there was no actual illness; the illness had occurred for the last time 9 years before the first taxable year in this proceeding—1946. In *Edward A. Havey, supra,* we considered it material that the taxpayer's wife, in 1945, was not suffering from any illness, her illness having occurred in 1943. She had suffered no further heart attacks and was not under the care of a physician. We recognized that trips and changes of climate were beneficial but concluded that the expenses there were not deductible because they were not *incurred primarily* for the prevention or alleviation of illness. The facts in this proceeding differ markedly from the facts in the *Stringham* case where it was shown that the taxpayer's child was recovering from an illness, and it was concluded that travel expense and the cost of maintaining the child while in Arizona were expenses which were clearly *incurred primarily* for and essential to the cure and mitigation of the child's illness.

In cases such as this the real question is whether the disputed expenditures were "paid for * * * prevention of disease" and were "extraordinary medical expenses" deductible under section 23 (x) rather than personal, living expenses within the meaning of section 24 (a). The question must always involve the acceptance of one and the rejection of the other one of the above alternatives. A line must be drawn somewhere between that which is a personal expense and that which is *incurred primarily for* the prevention of illness and disease. One may live in such a way during one's whole lifetime so

as to prevent the recurrence of illness and disease and so as to maintain the best health which is possible after some vital organ has become impaired, or one's health has become less than the health of a thoroughly normal and well person.

Under section 23 (x), a taxpayer may claim a deduction for medical expense which he has incurred and paid. The petitioner's son has now attained his majority, is employed, and is earning his living. The decision of the question in this proceeding may very well have some impact upon later years with respect to the income tax liability of the petitioner's son rather than her own income tax liability. If we were to hold here, under the facts, that the expenses in question are deductible by the petitioner under section 23 (x), it would follow as a matter of logic, the facts continuing to be the same, that the expenses of his meals and lodging in a later year or years would be deductible by Walter.

Each case must stand upon its own particular facts, but we think it is proper and reasonable to conclude that where the expenses of meals and lodging are involved, the line must be drawn at some point very much closer to the time of actual illness and the immediate recovery from such illness than can be found in this proceeding. The expenses for which the petitioner seeks deduction under section 23 (x) are the living expenses of her son. The only justification for claiming that these expenses constituted "medical expenses" within the intendment of section 23 (x) is that the petitioner's son found living in California more beneficial to his health than living in New York. Such expense falls within section 24 (a) (1) rather than section 23 (x). Furthermore, there is strong indication here that one of the reasons the petitioner's son was living in southern California was for the purpose of continuing his education at a university of his choice. However that may be, our conclusion would be the same even if he had continued to live in Florida. The respondent's determination is sustained.

*Decision will be entered for the respondent.*