William B. Watkins, and Estate of Maude V. Watkins, Deceased, William B. Watkins, Executor v. Commissioner.
William B. Watkins, & Estate of Maude v. Watkins v. Commissioner
Docket No. 38010.
United States Tax Court
1954 Tax Ct. Memo LEXIS 308; 13 T.C.M. (CCH) 119; T.C.M. (RIA) 54045; February 9, 1954
*308 Medical expenses: Section 23(x). - Upon the facts, held that travel of each of the petitioners, which was upon the advice of a physician, was directly and primarily for the mitigation of disease and, therefore, the cost thereof is deductible as expense for "medical care" under section 23(x), I.R.C.
Leonard S. Frost, Esq., 629 Euclid Avenue, Cleveland, Ohio, and C. Herbert Cox, C.P.A., for the petitioners. John K. Lynch, Esq., and S. Earl Heilman, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax for 1949 in the amount of $577.60. The only issue is whether petitioner is entitled to a deduction in 1949 for medical expense under section 23(x), I.R.C. for the cost of travel of himself and of his wife. Petitioners contend that the travel of each was primarily for the mitigation of a disease. Findings of Fact William B. Watkins and his wife, Maude V. Watkins, resided in Cleveland, Ohio, in 1949 and prior thereto. They filed a joint return for 1949 with the collector in Cleveland, Ohio. Maude V. Watkins died on July 10, 1951. Expenses of William B. Watkins. - The petitioner, William B. Watkins, hereinafter called *310 "Watkins", was engaged in the business of selling accident insurance in 1949; he had not retired from his business. He had been engaged in such business for 45 years. He was in his seventies in 1949. He suffered from a chronic ear disease which caused partial deafness. This was a handicap in his business activities which required personal solicitation of clients. For several years prior to 1949, he had been totally deaf in the right ear. The hearing in the left ear was impaired and he used a hearing aid. By 1948 the deafness in the left ear had increased progressively so that even with a hearing aid he could hear very poorly and with great difficulty. He regularly went to an ear specialist and to a doctor of internal medicine for treatments of the left ear and for medication during the years 1946, 1947, and 1948, in an effort to preserve some hearing in the left ear and to prevent total deafness in that ear. The disease of the ears from which Watkins suffers is catarrhal deafness which is associated with the collapse of the Eustachian tube. In this disease, which is not exclusively associated with old age, there is excessive and abnormal mucous secretions and congestion in the back *311 of the nose and upper throat which closes the openings to the Eustachian tubes, and when the air in the tubes is absorbed they collapse. Insufflation of the tubes - blowing air into them - can restore the tubes, but repeated closing of the tubes progressively diminishes hearing and leads to permanent collapse and total deafness. Furthermore, a person afflicted with catarrhal deafness suffers from an abnormal mucous secretion and congestion when affected by respiratory infections which a normal person does not experience. The total deafness of the right ear of Watkins is the result of permanent collapse of the tube in that ear which cannot be cured. Watkins' efforts were directed to avoiding the permanent collapse of the tube in his left ear. The treatments which he took included injections of vaccine to prevent or reduce respiratory infections and blowing air into the tube in his left ear. The latter treatment provided temporary relief only. In 1948, petitioner's physician in Cleveland, and internist, found that the hearing in the left ear was very poor and was progressively getting worse. The physician concluded that the routine treatments and medication received in Cleveland *312 were inadequate to retard the progressive deafness during the cold and damp winter months. He advised Watkins to go to Florida for the winter and early spring months and, while there, to stay out in the sunlight all day, every day, to get the heat of the sun which would dry up the catarrhal inflammation at the back of the nose and throat, and would decrease mucous secretion and congestion. He advised going to Florida, too, because by being there Watkins would avoid, and probably would not get, the respiratory infections he got in Cleveland in the winter which caused the catarrhal inflammation and the repeated closing of the Eustachian tube in the left ear. The only reason the physician advised Watkins to go to Florida was that the heat of the sun would have a direct bearing upon the catarrhal inflammation and congestion which was the direct cause of the closing of the Eustachian tube in the left ear and the consequent impairment of hearing. The physician did not advise Watkins to go to Florida for his general health or just because of the incidental benefit of the mild climate there during the winter months. The physician believed that continued collapses of the tube in the left *313 ear during the winter months in Cleveland would reduce greatly the likelihood that Watkins would retain even the impaired hearing he had in the left ear. The physician believed that the process of drying up the catarrhal congestion by daily exposure to the heat of the sun would mitigate the catarrhal deafness of the left ear and would constitute a specific remedy and thereapy for the progressive deafness and chronic ear disease. Watkins' physician also recommended that he consult an ear specialist in Florida so that the effect of the sunlight and heat upon the condition which affected the left ear could be watched. In January of 1949, Watkins, following the above advice, went to Fort Lauderdale, Florida. He remained there until sometime in April when he returned to Cleveland. Before Watkins made efforts to obtain relief of the condition affecting his left ear, he did not take winter vacations or trips to Florida. He had never taken a vacation in Florida. He went to Florida in 1949 for the sole purpose of getting the heat of the sun for relief from catarrhal congestion. Watkins followed his doctor's advice while he was in Fort Lauderdale. He stayed out of doors in the sunshine *314 every day for as many hours as possible. He consulted an ear specialist. In April, the Eustachian tube in his left ear opened naturally. He regained the ability to hear the natural tone of voices without the use of a hearing aid. His hearing returned considerably. He was able to hear an ordinary conversation across a desk without a hearing aid device. There is no complete cure for catarrhal deafness. The remedial effect of the heat and sunshine in Florida was not a permanent cure of Watkins' ear disease which would be adversely affected by recurrences of catarrhal congestion, but both had a mitigating effect and the condition was greatly improved. Toward the end of December of 1949, Watkins returned to Florida, upon his doctor's advice, for the purpose of repeating daily exposure to the sun. Watkins expended in 1949 for doctors' fees, medical treatments and examinations, hearing aid devices, transportation between Cleveland and Florida, and hotel lodging for himself, exclusive of meals, the total amount of $1,469. The total expenditure was primarily for mitigation of the ear disease and was expense incurred for "medical care" within the meaning of section 23(x). Watkins was not *315 compensated by insurance, or otherwise, for any of the above total expenditure. Expenses of Maude V. Watkins. - Maude V. Watkins, hereinafter called Mrs. Watkins, was in her seventies in 1949. In 1948, she had the disease known as osteoarthritis in her hips, knees, and spine; that is to say, the bony surfaces of those regions were affected by that type of arthritis, and she had a disability due to inability to use her joints. She suffered a great deal of pain, particularly in her knees. For the arthritis, she received medication, the taking internally of salicylates, and external applications of heat, ointments, and counterirritants. Her physician prescribed exposure to the heat of the sun and exercising by moving about and walking as much as possible out of doors in the sunshine, but this prescription could not be followed to the necessary extent in Cleveland during the winter months. In the latter part of 1948, Mrs. Watkins' physician advised her to go to Florida during the winter months for the benefit of her arthritis which would be received from the heat of the sun there and from getting out of doors for exercise, walking and moving about in the sun. Her doctor believed that *316 the time spent in the sunlight in Florida would lessen, and slow down the progress of, her disability due to her inability to use her joints. He did not advise her to go to Florida during the winter months for her general health, or just to make her feel better and more comfortable, or just for the incidental benefit of being in a better climate. He advised her to spend several months in Florida because the exposure to the sunlight and heat of the sun would have a direct, beneficial effect upon the arthritic condition in her hips, knees, and spine. Mrs. Watkins, following the advice of her doctor, went to Fort Lauderdale, Florida, in January of 1949, and she remained there until April. She went there solely for the mitigating effect of the sunshine and heat upon her arthritis, and so that she could take the prescribed amount of outdoor exercise. She did not consult a doctor there. She did not go to Florida for her general health, or for the purpose of accompanying her husband to Florida. After she returned to Cleveland in April of 1949, her doctor examined the arthritic condition of the affected areas and found that the time spent in Florida had had a mitigating effect upon the *317 disease. She had been able to move about with less pain and discomfort while she was in Florida, and she was able to continue to have less discomfort and more mobility after she returned to Cleveland. Also, after she returned to Cleveland, her doctor found that it was not necessary to continue giving her salicylates or to apply heat and ointments to her knees and back as he had done before she went to Florida. Mrs. Watkins' doctor prescribed another trip to Florida at the end of 1949, and she returned there in December of 1949 for the same reasons for which she had gone there in January of 1949. Mrs. Watkins expended in 1949 for doctors' fees and medical treatments, transportation between Cleveland and Florida, and hotel lodging for herself, exclusive of meals, the total amount of $926.90. The total expenditure was primarily for the mitigation of osteoarthritis and was expense incurred for "medical care" within the meaning of section 23(x). Neither Mrs. Watkins nor her husband were compensated by insurance or otherwise for any of the above total expenditures. Watkins and his wife maintained their home in Cleveland while they were in Florida during 1949. In the joint return *318 filed for 1949, claim was made for medical expenses of Watkins and Maude V. Watkins, not compensated by insurance or otherwise, in the total amount of $3,164.20 (which included $768.30 for meals in Florida which petitioners no longer claim as medical expense), from which 5 per cent of adjusted gross income, $837.01, was subtracted, and the difference, $2,327.19, was taken as medical and dental expense deduction. The Commissioner, in determining the deficiency, disallowed the deduction of $2,327.19. Opinion HARRON, Judge: Section 23(x) of the Code, as amended by section 304, Revenue Act of 1948, as it applies to the year 1949, allows a maximum deduction for medical care of a taxpayer and his spouse, not compensated by insurance or otherwise, in the amount of $5,000, where a joint return is filed. A husband and wife who file a joint return may deduct only such expenses as exceed 5 per cent [1] of their aggregate net income computed without the benefit of section 23(x). The issue to be decided involves the claim for deduction of *319 expenses for medical care of Watkins and his wife which were paid during 1949, which were not compensated by insurance or otherwise. The petitioners now claim a deduction based upon expenses incurred and paid for alleged "medical care" in the total amount of $2,395.90, rather than $3,164.20, which was claimed in their joint return. The 5 per cent limitation leaves $1,558.89 as the amount of the deduction now claimed under section 23(x). The questions are whether the expenses incurred and paid for travel to and from, and lodging at, Fort Lauderdale, Florida in 1949, of each individual, William B. Watkins and Maude V. Watkins, constituted expenses paid for the "medical care" of each within the meaning of section 23(x) of the Code. Expenses of each individual paid for doctors' fees, for medical treatments, and other medical costs, the amounts of which are agreed upon, are not in dispute. The aggregate amount thereof is less than 5 per cent of the aggregate adjusted gross income of the petitioners. The respondent does not dispute the fact that neither individual was compensated by insurance or otherwise for the expenses in question. It is provided in section 23(x) that the term "medical *320 care" shall include the following: "* * * amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * *." The Commissioner's regulation under sections 23(x), Regulations 111, section 29.23 (x)-1, provides, inter alia, as follows: "* * * Allowable deductions under section 23(x) will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for expenses for * * * travel primarily for and essential to the rendition of the medical services or to the prevention or alleviation of a physical or mental defect or illness, are deductible." In considering whether expenses paid come within section 23(x), the relationship of section 24(a)(1) of the Code, which specifies that personal, living, or family expenses are not deductible shall be considered. Section 24(a)(1), as amended by section 127(b) of the Revenue Act of 1942, excepts from the prohibition of section 24(a), "extraordinary medical expenses deductible under section 23(x)." The question whether expenses constitute "medical care" within section *321 23(x) is, in each case, a question of fact. Commissioner v. Stringham, 183 Fed. (2d) 579, affirming 12 T.C. 580; Frances Hoffman, 17 T.C. 1380, 1383. Also, whether expenses fall within section 23(x) "is largely a matter of definition and the ascertainment of Congressional intent." Edward A. Havey, 12 T.C. 409, 411. The Commissioner argues that the facts as they relate to each petitioner are not of the same or analogous nature as the facts in L. Keever Stringham, 12 T.C. 580, affd. 183 Fed. (2d) 579 (supra), and that they are not substantially different from the facts in the Havey case, supra. The evidence relating to each individual petitioner supports the finding that the travel expense, including lodging but excluding meals, constitutes expenses paid for "medical care" within the scope and intendment of section 23(x), and the conclusion that the rationale of the Stringham case applies, and that the Havey case is distinguishable on its facts. Furthermore, the following observations in the Havey case, (pp. 412 and 413) about the meaning of the term "medical care" in the statute support the claims *322 of the petitioners: "* * * To be deductible as medical expense, there must be a direct or proximate relation between the expense and the diagnosis, cure, mitigation, treatment, or prevention of disease or the expense must have been incurred for the purpose of affecting some structure or function of the body. * * *
"It seems clear to us that the deduction in question may be claimed only where there is a health or body condition coming within the statutory concept and where the expense was incurred primarily for the prevention or alleviation of such condition. An incidental benefit is not enough." The evidence establishes that the trips to Florida of both William and Maude Watkins were solely and primarily for the mitigation of the diseases with which each was afflicted, and were not for general and incidental benefits; and that there existed a direct relation between the exposure to the heat of the sun and being out of doors in the sun, in Florida, and the mitigation, alleviation, and treatment of the catarrhal congestion which affected Watkins' left ear, and of the osteoarthritis which crippled Mrs. Watkins. There is positive proof that the physical illness of each individual *323 was greatly alleviated by the continuous exposure, in Florida, to the heat of the sun. As was true in the Stringham case, the evidence supports the conclusion that each of the individuals, Watkins and his wife, received mitigation of the disease from which each was suffering, i.e., actual, therapeutic aid, by taking natural sun light treatments, which was apart from the general benefit to health which any vacationer or visitor would receive from being out of doors in the sun, or which a person would receive incidentally who suffered from a disease which would not be directly alleviated by exposure to the sun. Furthermore, the evidence establishes that the travel of Maude Watkins to Florida was for the mitigation of her osteoarthritis, that it was necessary that it was not a mere substitute for therapy she could have received in Cleveland, and that it was not merely for the purpose of accompanying her husband. The expenses of travel and of lodging in Florida were not personal expenses but were for "medical care", under the Commissioner's regulation, if the travel was primarily for and essential to the alleviation of a physical illness. It has been found, in the case of each individual, *324 that such was true. This Court held in the Stringham case that the costs of transportation and of lodging while away from home on a trip undertaken primarily for the purposes mentioned in section 23(x) are a part of medical care expenses within that section. Under the facts, the same holding is made here with respect to the expenses of each individual. The respondent's determination is reversed. However, recomputation of the deficiency under Rule 50 is necessary because petitioners have reduced the amount of the deduction claimed by excluding the costs of meals while away from home. Decision will be entered under Rule. 50. Footnotes
1. Section 307(a) of the Revenue Act of 1951 amended section 23(x)↩ so as to eliminate the 5 per cent limitation as to persons aged 65 years or over.