*Decision will be entered under Rule 50.*

BERTHA M. RODGERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51347. Filed November 18, 1955.

*Thomas E. Toney, Jr., Esq.*, for the petitioner.
*Stanley W. Ozark, Esq.*, for the respondent.

258

OPINION.

BRUCE, *Judge:* Whether certain travel expenses are deductible as medical expenditures under section 23 (x) of the Internal Revenue

Code of 1939 [1] is the principal question presented. Petitioner's husband, George, was a retired engineer in his seventies and suffered from generalized arteriosclerosis, with particular emphasis on cerebral sclerosis. The cardiologist whom he consulted advised him to seek a warm equable climate in order to avoid stress on the cardiovascular system caused by sudden marked temperature changes. It was the opinion of the cardiologist that avoiding such stresses would slow the process of vascular deterioration and prolong George's life. Also, as George was subject to dimouts, he was advised by the cardiologist that someone should be with him at all times. In line with these instructions George, accompanied by petitioner, traveled in each of the taxable years from their home in St. Louis, Missouri, to either Florida or Arizona in the winter and to Wisconsin in the summer. In 1947 and 1949 they made trips to Tulsa, Oklahoma, in order to visit an eye doctor for the purpose of having their glasses changed. Respondent disallowed the deduction of the cost of their transportation, food, and lodgings while on these trips. Petitioner contests this determination.

Section 23 (x) provides with certain limitations for the deduction from gross income of amounts expended for medical care. "Medical care" is defined by section 23 (x) as follows:

The term "medical care," as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance).

However, section 23 (x) must be read in conjunction with section 24 (a) (1) of the Internal Revenue Code of 1939 which provides that "Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23 (x)" shall not be deducted from gross income. Thus, Congress has made it clear that items which are primarily personal living expenses are not deductible as "medical expenses." *L. Keever Stringham*, 12 T. C. 580, affd. (C. A. 6) 183 F. 2d 579. Adhering to this policy Regulations 111, section 29.23 (x)-1, provide:

Allowable deductions under section 23 (x) will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for * * * travel primarily for and essential to the rendition of the medical services or to the prevention or alleviation of a physical or mental defect or illness, are deductible.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(x) MEDICAL, DENTAL, ETC., EXPENSES.—Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent specified in section 25 (b) (3), to the extent that such expenses exceed 5 per centum of the adjusted gross income. * * * The term "medical care," as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance).

While the cost of travel under some circumstances may be deductible as a medical expense, "it is obvious that many expenses are so personal in nature that they may only in rare situations lose their identity as ordinary personal expenses and acquire deductibility as amounts claimed primarily for the prevention or alleviation of disease. Therefore, it appears that in cases such as the one now before us, where the expenses sought to be deducted may be either medical or personal in nature, the ultimate determination must be primarily one of fact." *L. Keever Stringham, supra*, at pp. 584–585. "The question must always involve the acceptance of one and the rejection of the other one of the above alternatives." *Frances Hoffman*, 17 T. C. 1380, 1385.

We shall first consider the trips to Arizona, Florida, and Wisconsin which were made in order to avoid the detrimental effect on George's health of the summer and winter climate in St. Louis. Not every expense of eliminating an environmental condition which is detrimental to the disease or physical defect with which the taxpayer is afflicted is deductible. In *Samuel Ochs*, 17 T. C. 130, affd. (C. A. 2) 195 F. 2d 692, certiorari denied 344 U. S. 827, this Court did not allow the deduction of the cost of sending the taxpayer's children to boarding school so as to prevent the recurrence of cancer in the mother and to allow the mother to regain her voice. Similarly, in *Frances Hoffman, supra*, the cost of keeping a son in California was not deductible where the climate in New York was uncongenial with his impaired heart.

In *Frances Hoffman, supra*, at pp. 1385–1386, it was pointed out that "One may live in such a way during one's whole lifetime so as to prevent the recurrence of illness and disease and so as to maintain the best health which is possible after some vital organ has become impaired, or one's health has become less than the health of a thoroughly normal and well person." In those cases, as in the case of George, it may be necessary to live permanently in a salubrious climate. If a taxpayer lives in a place having such a climate throughout the year, the fact that the climate is beneficial to his health does not make his personal living expenses deductible. Cf. *Frances Hoffman, supra*. However, another taxpayer may live in a place where, because some vital organ has become impaired, the climate during 6 months out of the year is detrimental to his health. Perhaps, under some circumstances the cost of traveling to and living in a place having a salubrious climate during those 6 months would be primarily a medical expense. Cf. *L. Keever Stringham, supra*. In many situations economic necessity (such as employment), the amount of travel required, the temporary nature of the illness, or the like, may make it impracticable to move permanently to a place having a suitable climate. However, under other circumstances, where the taxpayer chooses for purely personal considerations to travel during a large part of the year for the remainder of his life rather than to live in a locality having a climate suited to his health

throughout the year, the cost of traveling to and living in a salubrious climate may be primarily a personal expense. While a taxpayer is certainly not required to live in a manner leading to the fewest tax benefits, we do not think, under the circumstances described, that Congress intended to subsidize the cost of the taxpayer's travel and his living expenses in resort hotels even though it would be detrimental to his health to remain throughout the year in the locality in which he chooses to make his home.

Since each case must turn upon its own particular facts and circumstances, we are of the opinion that the costs of George's and petitioner's repeated migration to the South in the winter and to the North in the summer were primarily personal living expenses rather than medical expenses. Although it was desirable in order to slow down the process of vascular deterioration to seek a warm, equable climate and it was certainly inadvisable for George to travel and to live alone during a large part of the year, the choice of this migratory life over permanent settlement in a salubrious climate was apparently motivated entirely by personal considerations, including the desire to spend most of the year in St. Louis. Unlike the taxpayer in *L. Keever Stringham, supra*, it was not impractical for George and petitioner to live permanently in a salubrious climate. Also, while the travel was beneficial, in that it avoided the detrimental effect of the cold winters and hot summers in St. Louis, the trips were not made in order to receive medical treatment or therapeutic aid. The climate in Arizona, Florida, and Wisconsin did not mitigate or alleviate George's condition, but was simply less detrimental than the climate in St. Louis.

The vascular deterioration from which George suffered was not unlike that experienced by other older people, only more rapid. In a sense the benefit he derived from the climate in Arizona, Florida, and Wisconsin was no different from that acquired from the same climate by all elderly vacationers. Cf. *L. Keever Stringham, supra*, at p. 585. Within limits George was able to live a completely normal life for his age, and the principal treatment consisted of avoiding conditions, such as extreme temperature changes, which would place a stress upon his impaired cardiovascular system. George's condition was permanent and it was the experience of his physician that persons in the same condition may live for 20 years or longer. To obtain the climatic condition favorable to his impaired cardiovascular system required not just a few trips but an entirely new mode of life or place of residence. In our opinion the facts in the instant case do not differ materially from the situation presented in *Frances Hoffman, supra*, where this Court held that expenses fell within the provisions of section 24 (a) (1) rather than section 23 (x).

The trips to Tulsa, Oklahoma, in 1947 and 1949 were of an entirely different nature. They were made for the primary purpose of visiting an eye doctor who was familiar with George's eyes and who could fit him properly with trifocal lenses. George had been unable to secure proper lenses in St. Louis. Petitioner accompanied George on these trips as it was inadvisable for him to travel alone. She also had her glasses changed. Travel for the purpose of receiving medical attention clearly falls within the provisions of section 23 (x), and the cost of petitioner's accompanying George on these trips is also deductible. *L. Keever Stringham, supra;* 1946–1 C. B. 75.

Petitioner failed to prove the exact amounts expended for food while on the trips to Tulsa, nor did she show that the amounts paid to hotels were entirely for lodgings rather than partly for personal telephone calls and other nondeductible items. Bearing heavily on the petitioner, who is responsible for the uncertainty, we have found that she and George expended at least the amounts set forth in our findings of fact. *Cohan* v. *Commissioner*, 39 F. 2d 540. In our opinion, these amounts and the additional sum expended for transportation in 1947 [2] may be properly deducted as medical expenses. *L. Keever Stringham, supra.* Contrary to respondent's contention we do not think this Court is precluded by Regulations 111, section 29.23 (x)–1,[3] from allowing the deduction of the cost of meals as medical expenses because the expenditures were not substantiated in the manner specified in that section.

*Decision will be entered under Rule 50.*

---

[2] Petitioner did not claim, request, or prove her right to a deduction for the amount expended for transportation on the 1949 trip.

[3] Regulations 111.

SEC. 29.23 (x)–1. MEDICAL, DENTAL, ETC., EXPENSES.—

\* \* \* \* \* \* \*

In connection with claims for deductions under section 23 (x), the taxpayer shall furnish the name and address of each person to whom payment for medical expenses was made and the amount and the approximate date of the actual payment thereof in each case. If payment was in kind, then such fact shall be so reflected. Claims for deduction must be substantiated, when requested by the Commissioner, by a statement from the individual or entity to which payment for medical expenses was paid showing the nature of the service rendered, to or for whom rendered, the amount paid therefor, and the date of the actual payment thereof, and by such other information as the Commissioner may deem necessary.