*Decisions will be entered under Rule 50.*

FRED H. DANIELS AND ELEANOR G. DANIELS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 577–62. Filed November 27, 1963.

*Raymond T. Mahon*, for the petitioners.
*Lawrence A. Wright*, for the respondent.

**OPINION**

OPPER, *Judge:* It seems clear that the construction of petitioners' fallout shelter was not for the "diagnosis, cure, mitigation," or "treatment" of an existing disease. Any justification for the deduction of its cost as a medical expense [1] must arise from its characterization as "prevention." But we have been referred to no authority extending the concept of prevention to so remote a hazard to health as would be required here to sustain petitioners. On the contrary,

---

[1] SEC. 213 [I.R.C. 1954]. MEDICAL, DENTAL, ETC., EXPENSES.

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance, or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152) :

  \*　　\*　　\*　　\*　　\*　　\*　　\*

(e) DEFINITIONS.—For purposes of this section—

　(1) The term "medical care" means amounts paid—

　　(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance) \* \* \*

The Congressional intent is sufficiently evident to require the showing of the *present existence* or the *imminent probability* of a disease, physical or mental defect, or illness as the initial step in qualifying an expenditure as a medical expense. * * * [Emphasis added. *L. Keever Stringham*, 12 T.C. 580, 584 (1949), affirmed per curiam 183 F. 2d 579 (C.A. 6, 1950).]

The facts show that there was no "present existence" of fallout radiation disease, and petitioners do not contend otherwise. In view of the great disparity between the radiation level in Worcester in 1960 and that which would cause illness, there cannot be said to have been any "imminent probability" of disease. Petitioners have introduced no plausible evidence tending to show the imminent probability of increased radiation in the Worcester area at or before the time the shelter was constructed.

Indeed, we could not find on this record that the expenditure would not have been made but for the advice of a physician. *Robert M. Bilder*, 33 T.C. 155 (1959), affirmed on other grounds 369 U.S. 499 (1962), which reversed 289 F. 2d 291 (C.A. 3, 1961); *Ochs v. Commissioner*, 195 F. 2d 692, 697 (C.A. 2, 1952), affirming 17 T.C. 130 (1951), certiorari denied 344 U.S. 827. The shelter was well underway before the doctor's letter was written, and petitioners introduced no evidence showing that the shelter was built on the doctor's recommendation primarily for the prevention or mitigation of disease. See *Estate of Eugene Merrick Webb*, 30 T.C. 1202, 1213 (1958).

Whether the danger to society from an atomic attack may adequately explain governmental action in undertaking or encouraging precautionary measures does not contribute to the solution of the present problem. What is requisite is a proximate and immediate relationship between at least some illness threatening petitioners and the fallout shelter they have constructed. In this aspect the situation is not unlike the installation of sprinkler systems or fire escapes to mitigate the danger of illness from smoke inhalation or infected burns. No doubt there is some relationship between the two but it could hardly be said that Congress intended this to authorize a medical as contrasted with a business[2] deduction. And the same case could be made here that such measures would not be capital improvements, since petitioners' contention in this respect is limited to evidence that the residence was not salable to anyone—that it had no fair market value which an improvement could increase. As to this we express no opinion. In the view we take, the capital improvement concept[3]

[2] Cf. I.T. 3588, 1942-2 C.B. 89.

[3] "* * * for example, where a taxpayer is advised by a physician to install an elevator in his residence so that the taxpayer's wife who is afflicted with heart disease will not be required to climb stairs [, if] the cost of installing the elevator is $1,000 and the increase in the value of the residence is determined to be only $700, the difference of $300, which is the amount in excess of the value enhancement, is deductible as a medical expense. * * *" Sec. 1.213–1(e)(1)(iii), Income Tax Regs., as amended by T.D. 6604, 1962-2 C.B. 84, 87–88.

need not be discussed as a material consideration and our conclusion does not rest upon it.

Deductions are matters of legislative grace and petitioners have failed to show that there is more than a remote possibility, if any, that a disease threatening them in the Worcester area would be prevented by the shelter, nor that its cost was different from other nondeductible personal[4] expenses "related to factors and equations of personal life and situation that leave them without the persuading certainty and undubious objectivity necessary to a tax deduction." *Rodgers* v. *Commissioner*, 241 F. 2d 552, 555 (C.A. 8, 1957), affirming 25 T.C. 254 (1955).

This is a factual matter, *Frances Hoffman*, 17 T.C. 1380 (1952), and on this record we must find that the criteria of deductibility have not been met.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[4] Even though the shelter was for an emergency, it was obviously designed as a place where petitioners could live for a possibly extended period.