DANIEL E. AND ESTHER R. MIZL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mizl v. Commissioner
Docket No. 5649-78.
United States Tax Court
T.C. Memo 1980-227; 1980 Tax Ct. Memo LEXIS 357; 40 T.C.M. (CCH) 552; T.C.M. (RIA) 80227; June 30, 1980, Filed Daniel E. Mizl, pro se. Shlomo A. Beilis, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1976 in the amount of $2,098.97. The sole issue presented by this case is whether the cost of a cruise taken by petitioners from January to April, 1977 is deductible under section 213 [1] as a medical care expense. *358 FINDINGS OF FACT Petitioners Daniel E. and Esther R. Mizl live in New York City and have resided there for over thirty years. In 1964, Mr. Mizl retired on disability from the Department of Labor after twenty years' service. From 1965 to 1973, he worked as a laboratory specialist for the New York City school system. He retired from that job in 1973, also on disability. In April of 1972, Mr. Mizl began seeing a cardiologist, who diagnosed his ailments as hypertension, latent diabetes, and arteriosclerotic heart disease with angina. During the period from 1972 to 1976 Mr. Mizl's condition deteriorated. He suffered several heart attacks, although he was never hospitalized for them. He was treated with various vaso-dilating medications, including nitroglycerine, to alleviate the angina he experienced. Mr. Mizl's physician never recommended that he move to a warmer climate for the winter, nor did he recommend Mr. Mizl take any winter cruises. Mr. Mizl discussed taking this cruise with the doctor beforehand, and the doctor thought it was a good idea. Warm weather does relieve pains of angina, which are aggravated by the cold. The doctor had recommended that Mr. Mizl avoid *359 cold weather whenever possible to lessen the chest pain he experiences in New York in the winter. Angina is one of the symptoms of arteriosclerosis and although warmer weather mitigates the chest pains, it does not cure the underlying hardening of the arteries. Before 1972, petitioners often went south for winter vacations, either to Florida or on cruises. From January through March, 1974, Mr. Mizl took a sixty-one day cruise similar to the one at issue here. His wife did not accompany him because she did not have enough vacation time accumulated to take several months off from her job. Mr. Mizl divided the winter months of 1975 - 1976 between taking a cruise around South America and residing in Florida. Again, his wife did not accompany him. The cruise in question here was an around-the-world cruise taken by petitioners from January to April, 1977 on the Queen Elizabeth II. Mr. Mizl did not receive any medical treatment while he was on the cruise. He and his wife went ashore at the various ports and did some touring. Mr. Mizl paid for the tickets in December, 1976. Since the petitioners used the cash receipts and disbursements method of accounting for the year 1976, they *360 claimed a $6,950 medical expense deduction for the cost of Mr. Mizl's cruise on their timely filed 1976 tax return. An amended return was subsequently filed, which claimed a $6,950 deduction for the cost of Mrs. Mizl's fare, also as a medical expense. The respondent disallowed petitioners' $13,900 medical expense deduction as not falling within the purview of section 213. OPINION Petitioners seek to deduct the expense of a round-the-world cruise taken from January to April, 1977. Mr. Mizl suffered from arteriosclerosis, evidenced by angina, which became more severe during the winter months. Mr. Mizl did not work but was on disability retirement. From 1972 to 1976, Mr. Mizl spent his winters in Florida and also took several cruises. His physician never prescribed these trips south, although when consulted, he told Mr. Mizl that he thought the cruise was a good idea. The physician testified at trial that warmer weather does alleviate angina. Mrs. Mizl generally stayed in New York City during the winter because she could not take that much time off from work. In 1977, however, she had accumulated enough vacation time to join her husband on the cruise in question. The issue *361 presented by the facts is whether the $13,900 total cost of the two fares can be deducted by the Mizls as a medical expense. Petitioners contend that since the warmer weather mitigated Mr. Mizl's chest pains, amounts paid for the cruise are included within the meaning of the term "medical care" as defined in section 213(e) and are therefore deductible expenses under section 213(a). Respondent contends that the cruise, although beneficial to Mr. Mizl's health and well-being, was not primarily for or essential to Mr. Mizl's medical care and is therefore not deductible as a medical expense. Respondent's position herein is illustrated by Rev. Rul. 76-79, 1976-1 C.B. 70, in which he disallowed all expenses the taxpayer incurred in taking a physician-recommended cruise with a group of physicians who treated the taxpayer while on board, save for the amounts attributable to the actual medical care received. The Service held that the cruise was not primarily for and essential to the taxpayer's medical care. Since in the instant case Mr. Mizl did not take the cruise on the advice of a doctor, nor did he receive medical care while on board, respondent argues all expenses of the *362 cruise are nondeductible. Further, respondent contends petitioners have failed to meet their burden of proof that Mrs. Mizl's presence on the cruise was necessary and/or that it was otherwise directly and proximately related to Mr. Mizl's condition. We agree with respondent.
Section 213(e) allows a deduction for amounts in excess of three percent of a taxpayer's adjusted gross income which are paid during the taxable year for the medical care of himself, his spouse and dependents, and which are not compensated for by insurance or otherwise. Section 213(e)(1) defines "medical care" as the amounts paid (A) For the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or (C) for insurance * * * Section 1.213-1(e)(1)(ii), Income Tax Regs., further states that: Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. * * * However, an expenditure *363 which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care. That petitioners' cruise must be considered as a nondeductible vacation becomes especially clear when the preceding section is construed in conjunction with section 1.213-1(e)(1)(iv) which discusses deductibility of transportation expenses. It provides that: Expenses paid for transportation primarily for and essential to the rendition of the medical care are expenses paid for medical care. However, an amount allowable as a deduction for "transportation primarily for and essential to medical care" shall not include the cost of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a taxpayer go to a warm climate in order to alleviate a specific chronic ailment, the cost of meals and lodging while there would not be deductible. On the other hand, if the travel is undertaken merely for the general improvement of a taxpayer's health, neither the cost of transportation nor the cost of meals and lodging would be deductible. * * * In this case, Mr. Mizl's doctor never prescribed or *364 ordered travel to a warmer winter climate. He never suggested it, but agreed when consulted that the trip was a good idea. He did testify that warmer climates alleviate symptoms of angina. Petitioner's cruise was not taken on doctor's orders, but rather was taken for the general improvement of his health. Petitioners have not proved that it was medically necessary for Mr. Mizl to travel south for the sake of his health. An expenditure merely beneficial to the general health of an individual is not a deductible medical expense. The legislative history of section 213 provides some guidance as well. Prior to enactment of the Internal Revenue Code of 1954, courts permitted all costs of travel to obtain medical care, including food and lodging and other living expenses, to be deductible as medical expenses. Stringham v. Commissioner,12 T.C. 580 (1949), affd. per curiam 183 F.2d 579 (6th Cir. 1950). To preclude taxpayers from deducting the full cost of wintering in Florida or other resort areas, Congress, in enacting section 213 in 1954, replaced the word "travel" with the narrower word "transportation." Section 213(e)(1)(B). Regulations enacted thereafter *365 ruled out deductions for food and lodging incident to travel as well as other living expenses, which had been deductible before 1954. Commissioner v. Bilder,369 U.S. 499 (1962) upheld the above-discussed regulations. In that case, a heart specialist advised the taxpayer to spend the winter season in a warm climate, to improve his heart condition. Although the taxpayer's trip to Florida was admittedly "not for vacation purposes but was 'a medical necessity and * * * a primary part of necessary medical treatment of a disease'" (Bilder at 500, fn. 2), the deduction for living expenses while in Florida was disallowed. The cost of transportation to and from Florida was held to be deductible. The Supreme Court, in reaching its decision, analyzed the legislative history of section 213(e)(1). It quoted the the House and Senate Committee Reports, parts of which are especially pertinent here: The deduction permitted for "transportation primarily for and essential to medical care" clarifies existing law in that it specifically excludes deduction of any meals and lodging while away from home receiving medical treatment. [Emphasis in original] For *366 example, if a doctor prescribes [emphasis added] that a patient must go [emphasis added] to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health [emphasis added], the cost of the patient's transportation to Florida would be deductible but not his living expenses while there. * * * [Emphasis in original.] [Bilder at 502.] In determining whether trips taken to diminish discomfort of a chronic condition, but serving at the same time as pleasurable vacations are personal nondeductible expenses or deductible medical expenses, each situation must be examined on its individual facts. Rodgers v. Commissioner,241 F.2d 552 (8th Cir. 1957), affg. 25 T.C. 254 (1955). The Court will not permit taxpayers to turn personal expenses into medical expenses even when the trip is partly medically motivated. The cruise was essentially a vacation, travel being at best only an incidental component that cannot, by any stretch of the imagination, *367 be considered primarily for and essential to medical care. Travel in one sense is involved, in that the ship does cruise from place to place. But the cruising, with all the amenities provided, is predominantly a vacation in itself, rather than a mode of conveyance to a place where disease is mitigated. This distinguishes in part the facts before us from those in Bilder where the cost of transportation (but not living expenses) was allowed to the taxpayer. For Mrs. Mizl's expenses to be deductible, her presence on the trip must be indispensable. Carasso v. Commissioner,34 T.C. 1139 (1960), affd. 292 F.2d 367 (2d Cir. 1961), cert. denied 369 U.S. 874 (1962); Cohn v. Commissioner,38 T.C. 387 (1962); Rose v. Commissioner,52 T.C. 521 (1969), affd. per curiam 435 F.2d 149 (5th Cir. 1970), cert. denied 402 U.S. 907 (1971). On the facts presented, we cannot say that her presence was required. She did not accompany her husband from 1972 to 1976 on his winter sojourns. There is no evidence that Mr. Mizl's condition had so worsened as to make her presence indispensable during *368 the trip in question. Undoubtedly, she made the trip more pleasant and beneficial, but that alone will not make her trip deductible, particularly when Mr. Mizl's trip is nondeductible. When the patient's trip is held to be a personal expense, the amount expended for the trip of a spouse or family member is clearly personal as well. Not every activity which benefits health is permitted as a medical care deduction under section 213. Rather, the activity must meet the strict standards established by Congress in 1954. The possibility for abuse is simply too great otherwise, which is the very reason Congress tightened the statute in 1954. Petitioners have failed to meet their burden of proof by these strict standards. They have not shown that they are entitled to medical care deductions for the expenses related to this cruise, and the deductions must be disallowed. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.↩