Herman A. Brody v. Commissioner.
Brody v. Commissioner
Docket No. 16406.
United States Tax Court
1949 Tax Ct. Memo LEXIS 234; 8 T.C.M. (CCH) 288; T.C.M. (RIA) 49071; March 24, 1949
*234 Expenses of taxpayer, who had suffered a coronary occlusion, and his wife, for railroad and Pullman travel; for a year's rent of an apartment, and wages of a maid employed to care for the apartment, held, not allowable as deductions for medical care. Thomas J. McManus, Esq., Union Trust Bldg., Pittsburgh, Pa., for the petitioner. Stanley W. Herzfeld, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined a deficiency of $1,272.29 in petitioner's income tax for the year 1945, consequent on the disallowance of an item of $2,256.47 claimed in petitioner's return as a medical expense deduction. The facts immediately following were stipulated: [The Facts] Petitioner was born in *235 Czechoslovakia in 1900. He came to the United States in 1921. He is married and lives with his wife and three children, two of whom are twin boys and the other of whom is a girl. In the year 1945 the boys were 19 years of age and the girl was 13. From 1931 to 1938 petitioner conducted retail furniture stores as a corporation under the name of Brody's, Inc., in McDonald, Pennsylvania, and Canonsburg, Pennsylvania. From 1938 to 1947 petitioner and his brother were partners in said business. In 1947 petitioner and his brother dissolved the partnership, petitioner taking the Canonsburg store and his brother the McDonald store. Until July 3, 1944 petitioner devoted his entire working time to his furniture business. Since then he has not rendered any services in that or any other business. On July 3, 1944 petitioner suffered a heart attack which his physicians diagnosed as coronary occlusion. He was confined in the Montefiore Hospital, Pittsburgh, Pennsylvania, from July 4, 1944 to August 18, 1944, a period of 45 days. He was discharged from the hospital on August 18, 1944. From August 18, 1944 to October 5, 1944, petitioner was confined in his home for convalescence. From July 3, 1944 to *236 December 31, 1945, petitioner was totally disabled and was not able to perform any work of any kind. Petitioner has been pronounced totally disabled by the following insurance companies: Aetna Life Insurance Company
New York Life Insurance Company Metropolitan Life Insurance Company Prudential Life Insurance Company Petitioner first went to Miami Beach, Florida, for a vacation on or about February 1, 1940 and remained there for about three or four weeks. He was accompanied on this trip by his wife and stayed at the Winter Haven Hotel. Petitioner next went to Miami Beach, Florida, for a vacation on or about February 1, 1941 and remained there about one month. He was accompanied on this trip by his wife and three children and stayed at the Royal Palm Hotel. During this trip petitioner's three children attended the Drexel School, a private school. Petitioner's wife underwent an abdominal operation at the Montefiore Hospital, Pittsburgh, Pennsylvania, in August 1943. She went to Miami Beach, Florida, to recuperate in September 1943 and remained there until the end of April 1944. She rented a furnished apartment at 1250 Pennsylvania Avenue for the season. Petitioner's *237 wife was accompanied by her daughter during the entire period. Petitioner visited his wife and daughter from about Christmas of 1943 to February 1, 1944. On October 5, 1944 petitioner, his wife and daughter left Pittsburgh by rail and arrived in Miami Beach, Florida, on or about October 8, 1944, and remained there until June 21, 1945, when they returned to Pittsburgh. They rented a furnished apartment at 1235 Collins Avenue, Miami Beach, Florida, and occupied said apartment under the terms of a written lease. In June 1945, petitioner rented a furnished winter apartment at 241-28th Street, Miami Beach, Florida, for a period of one year. He paid rent for the summer months in order that the apartment would be available for him when he returned there in the fall of 1945. On or about September 15, 1945, petitioner, his wife and daughter left Pittsburgh and arrived in Miami Beach, Florida, on or about September 18, 1945, and remained in the said apartment until June 1946, when they returned to Pittsburgh. Petitioner had to rent the apartment for a full year in order to have it during the winter. The apartment house was closed during the summer months and could not be occupied. Subsequent *238 to the September 1945 to June 1946 season, petitioner, his wife and daughter occupied the said apartment at 241-28th Street, Miami Beach, Florida, during the following periods: September 1946 to June 1947 October 12, 1947 to April 20, 1948 He paid rent for the full year for the reasons set forth above. In the year 1945 petitioner paid expenses as follows in connection with his trip to Florida and for physicians and drugs: Railroad fare and Pullman for peti-
tioner
$ 145.54
Railroad fare and Pullman for peti-
tioner's wife
145.54
Rental of apartment
2,200.00
Maid service (40 weeks at $26.20 a
week)
1,048.00
Florida expenses
$3,539.08
Physicians and Drugs
Dr. W. L. Mullins, Pittsburgh, Pa.
$ 35.00
Dr. A. Goldblum, Pittsburgh, Pa.
27.00
Dr. M. A. Kugel, Miami Beach, Florida
60.00
Dr. Murray M. Reckson, Miami Beach,
Florida
178.00
Drugs purchased at Liggetts, Black-
stone Pharmacy, Prescription Center,
Miami Beach, Florida
100.00
Physicians and drugs
$ 400.00
Total
$3,939.08 Petitioner carried no health or accident insurance and the said expenses were not compensated for by insurance or otherwise. Petitioner claimed the sum of *239 $2,256.47 as a deduction under the provisions of section 23 (X) of the Internal Revenue Code. Respondent disallowed the deduction. The following facts are found from the evidence: When petitioner left Pittsburgh in October 1944 to go to Florida, the landlord requested petitioner to permit his (the landlord's) son to occupy petitioner's apartment with furniture and carpeting. Petitioner complied with the landlord's request and did not charge the landlord's son any rent nor did the landlord charge petitioner rent during the period of such occupancy. On December 4, 1944, the landlord sold the apartment in which petitioner lived and petitioner was notified to vacate the premises. Petitioner's wife returned to Pittsburgh by air and sold some of the items of furnishings and stored the others. On petitioner's return to Pittsburgh in June 1945, he and his wife lived a a hotel for seven weeks, living later in an apartment. While living in Florida petitioner suffered chest pains and distress in breathing. The money spent for maid service in Miami was for cleaning petitioner's apartment. Because he has not voted during his absence in Florida, petitioner's name *240 has been stricken from the list of voters in Pittsburgh. He maintains his church affiliations in Pittsburgh. In this case we are asked to approve a deduction from income of expenses incurred by petitioner, who had suffered a coronary occlusion on July 3, 1944, and his wife for railroad and Pullman travel between Miami, Florida, and Pittsburgh, Pennsylvania; for one year's rent of an apartment in Miami, and 40 weeks' wages paid to a maid to clean the apartment. No question is raised by respondent as to the expenses incurred for physicians and drugs either in Pittsburgh or Miami. Petitioner contends that these expenses were incurred on the advice of a heart specialist who thought petitioner would get relief from distress in breathing by going either to Arizona or Florida. [Opinion] In the first place, it is noted that the railroad trip in question originated in Florida, not in Pittsburgh. Petitioner, his wife and daughter had gone to Miami in October 1944 and remained there until June 1945. In the latter month they returned to Pittsburgh, where they remained until the middle of September 1945, when they returned to Miami and lived until June 1946. Thus the travel expense was *241 from Miami to Pittsburgh and return to Miami. It was not taken in conformity with the advice of the physician that the petitioner would be more comfortable in the winter months in a warmer climate. No reason whatsoever is advanced as to why petitioner returned to Pittsburgh each year. It is stipulated that after July 1944 he was unable to perform work of any kind and rendered no services to any business. There is no testimony that the trip to Pittsburgh was advised by the Florida doctors who attended petitioner there, nor is there any testimony that the trip was even remotely connected with the therapeutic treatment of petitioner. Absent any logical reason for the trip to Pittsburgh, the question naturally obtrudes - if residence in Florida is beneficial to petitioner why the return to the locale in which the abnormal heart condition was experienced? As above observed, the record is entirely silent as to the purpose and reason for the trip. Had petitioner in his mind, if not in fact, taken permanent residence in Florida and reversed his vacation procedure of former years by seeking a northern climate during the summer months, thus avoiding the tropical heat of that period in Florida? *242 We can only conjecture. But subsequent conduct of petitioner is in keeping with the above suggestion. We are of the opinion that the railroad trips in question are not shown to have been directly or proximately related to the cure, mitigation or treatment of petitioner's affected heart. See Edward A. Havey, 12 T.C. 409 (March 23, 1949). For different but equally compelling reasons we must likewise approve respondent's action in disallowance of rent for the apartment. Petitioner rented the apartment for the entire year. This at once suggests what was queried above, i.e., that petitioner had abandoned his Pittsburgh residence in favor of Miami. Be it remembered that petitioner was paying no rent in Pittsburgh during his absence. His furniture was in storage. His name had been stricken from the voting rolls. All circumstances to be considered. In such a situation we believe it would be a far stretch of the Congressional intent to allow a deduction of a year's rent of the apartment. Accordingly, we have approved the disallowance. The wages of the maid are clearly personal expense, not even remotely related to the treatment of petitioner's disease. They fall within the *243 prohibition of section 24 (a)(1), I.R.C.
Decision will be entered for the respondent.