## OCHS v. COMMISSIONER OF INTERNAL REVENUE.

No. 188, Docket 22214.

United States Court of Appeals
Second Circuit.

Argued Feb. 15, 1952.

Decided March 27, 1952.

Frank, Circuit Judge, dissented.

Julian G. Culver, New York City, attorney and counsel for petitioner, Samuel Ochs.

Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott and Louise Foster, Sp. Assts. to the Atty. Gen., for the respondent Commissioner of Internal Revenue.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised by this appeal is whether the taxpayer Samuel Ochs was entitled under Section 23(x) of the Internal Revenue Code to deduct the sum of $1,456.-

50 paid by him for maintaining his two minor children in day school and boarding school as medical expenses incurred for the benefit of his wife. The pertinent sections of the Internal Revenue Code[1] and the Regulations[2] are set forth in the margin.

The Tax Court made the following findings:

"During the taxable year petitioner was the husband of Helen H. Ochs. They had two children, Josephine age six and Jeanne age four.

"On December 10, 1943, a thyroidectomy was performed on petitioner's wife. A histological examination disclosed a papillary carcinoma of the thyroid with multiple lymph node metastases, according to the surgeon's report. During the taxable year the petitioner maintained his two children in day school during the first half of the year and in boarding school during the latter half of the year at a cost of $1,456.50. Petitioner deducted this sum from his income for the year 1946 as a medical expense under section 23(x) of the Internal Revenue Code.

"During the taxable year, as a result of the operation on December 10, 1943, petitioner's wife was unable to speak above a

1. "§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:

⁕ ⁕ ⁕ * *

"(x) *Medical, dental, etc., expenses.* Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent specified in section 25(b) (3), to the extent that such expenses exceed 5 per centum of the adjusted gross income. ⁕ ⁕ ⁕ The term 'medical care,' as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance).

"§ 24. *Items not deductible*

"*(a) General rule.* In computing net income no deduction shall in any case be allowed in respect of—

"(1) Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23(x)."
26 U.S.C.A. §§ 23(x), 24(a) (1).

2. Sec. 29.23(x)–1. Medical, dental, etc., expenses.— ⁕ ⁕ ⁕
The term "medical care" as used in this section and in section 23(x) includes amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance). ⁕ ⁕ ⁕ Allowable deductions under section 23(x) will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for expenses for hospital, nursing, (including nurses' board where paid by the taxpayer), medical, laboratory, surgical, dental and other diagnostic and healing services, for drugs and medical and dental supplies (including artificial teeth or limbs), and for ambulance hire and travel primarily for and essential to the rendition of the medical services or to the prevention or alleviation of a physical or mental defect or illness, are deductible.

whisper. Efforts of petitioner's wife to speak were painful, required much of her strength, and left her in a highly nervous state. Petitioner was advised by the operating surgeon that his wife suffered from cancer of the throat, a condition which was fatal in many cases. He advised extensive X-ray treatment after the operation. Petitioner became alarmed when, by 1946, his wife's voice had failed to improve, and believed that the irritation and nervousness caused by attempting to care for the children at a time when she could scarcely speak above a whisper might cause a recurrence of the cancer. Petitioner and his wife consulted a reputable physician and were advised by him that if the children were not separated from petitioner's wife she would not improve and her nervousness and irritation might cause a recurrence of the cancer. Petitioner continued to maintain his children in boarding school after the taxable year here involved until up to the end of five years following the operation of December 10, 1943, petitioner having been advised that if there was no recurrence of the cancer during that time his wife could be considered as having recovered from the cancer.

"During the taxable year petitioner's income was between $5,000 and $6,000. Petitioner's two children have not attended private school but have lived at home and attended public school since a period beginning five years after the operation of December 10, 1943. Petitioner's purpose in sending the children to boarding school during the year 1946 was to alleviate his wife's pain and suffering in caring for the children by reason of her inability to speak above a whisper and to prevent a recurrence of the cancer which was responsible for the condition of her voice. He also thought it would be good for the children to be away from their mother as much as possible while she was unable to speak to them above a whisper.

"Petitioner's wife was employed part of her time in 1946 as a typist and stenographer. On account of the impairment which existed in her voice she found it difficult to hold a position and was only able to do part-time work. At the time of the hearing of this proceeding in 1951, she had recovered the use of her voice and seems to have entirely recovered from her throat cancer."

The Tax Court said in its opinion that it had no reason to doubt the good faith and truthfulness of the taxpayer and that his devotion and consideration for his wife were altogether admirable, but it nevertheless held that the expense of sending the children to school was not deductible as a medical expense under the provisions of Section 23(x) and the Treasury Regulations herein referred to.

In our opinion the expenses incurred by the taxpayer were non-deductible family expenses within the meaning of Section 24(a)(1) of the Code rather than medical expenses. Concededly the line between the two is a difficult one to draw, but this only reflects the fact that expenditures made on behalf of some members of a family unit frequently benefit others in the family as well. The wife in this case had in the past contributed the services—caring for the children—for which the husband was required to pay because, owing to her illness, she could no longer care for them. If, for example, the husband had employed a governess for the children, or a cook, the wages he would have paid would not be deductible. Or, if the wife had died, and the children were sent to a boarding school, there would certainly be no basis for contending that such expenses were deductible. The examples given serve to illustrate that the expenses here were made necessary by the loss of the wife's services, and that the only reason for allowing them as a deduction is that the wife also received a benefit. We think it unlikely that Congress intended to transform family expenses into medical expenses for this reason. The decision of the Tax Court is further supported by its conclusion that the expenditures were to some extent at least incurred while the wife was acting as a typist in order to earn money for the family. We do not think that the decisions discussed in the opinion of the Tax Court and the briefs of the parties have any real bearing upon the issues involved in this appeal.

The decision is affirmed.

FRANK, Circuit Judge (dissenting).

Humane considerations in revenue laws are undeniably exceptional. But there is no good reason why, when, for once, Congress, although seeking revenue, shows it has a heart, the courts should try to make it beat feebly. Here is a man earning between $5,000 and $6,000 a year. His wife was operated on for cancer three years earlier and has still not regained the use of her voice. The doctor says that she will not get any better—may indeed have a recurrence of the cancer, this time surely fatal—unless she is separated from her two children, aged six and four. The children are young, healthy, active and irrepressible; their mother cannot speak above a whisper without pain. She becomes ever more nervous and irritable when they are around; her voice does not improve when it should. The father (instead of sending her to a sanitarium) sends the children away to school and seeks to deduct the cost therefor as a "medical expense."

The Commissioner, the Tax Court, and now my colleagues, are certain Congress did not intend relief for a man in this grave plight. The truth is, of course, no one knows what Congress would have said if it had been faced with these facts. The few paltry sentences of Congressional history for § 23(x) do not lend strong support —indeed any support at all—to a strict construction theory: "This allowance is granted in consideration of the heavy tax burden that must be borne by industry during the existing emergency and of the desirability of maintaining the present high level of public health and morale. * * * The term 'medical care' is broadly defined to include amounts paid for the diagnoses, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body. It is not intended, however, that a deduction should be allowed for any expense that is not incurred primarily for the prevention or alleviation of a physical or mental defect or illness." [1]

I think that Congress would have said that this man's expense fell within the category of "mitigation, treatment, or prevention of disease," and that it was for the "purpose of affecting [a] structure or function of the body." The Commissioner argued, successfully in the Tax Court, that, because the money spent was only indirectly for the sake of the wife's health and directly for the children's maintenance, it could not qualify as a "medical expense." Much is made of the fact that the children themselves were healthy and normal—and little of the fact that it was their very health and normality which were draining away the mother's strength. The Commissioner seemingly admits that the deduction might be a medical expense if the wife were sent away from her children to a sanitarium for rest and quiet, but asserts that it never can be if, for the very same purpose, the children are sent away from the mother—even if a boarding-school for the children is cheaper than a sanitarium for the wife. I cannot believe that Congress intended such a meaningless distinction, that it meant to rule out all kinds of therapeutic treatment applied indirectly rather than directly—even though the indirect treatment be "primarily for the * * * alleviation of a physical or mental defect or illness." [2] The cure ought to be the doctor's business, not the Commissioner's.

1. Sen.Rep.1631, 77th Cong., 2d Sess. (1942) 95–96.

2. The Commissioner has, in the past, shown more liberal tendencies in sanctioning somewhat unorthodox kinds of treatment as contemplated by the statute: He has allowed the deduction of fees paid to chiropractors and Christian Science practitioners. I. T. 3598, 1943 CB 157. Bureau letter, February 2, 1943. 433 CCH, Fed.Tax.Rep. § 6175. He should not, in this context, lag behind the progress of the medical art. Especially in this case should the Commissioner realize the growing emphasis placed by medical practitioners upon peace of mind as a major factor in the recovery of patients from what were formerly thought to be entirely organic diseases. If the wife here had been recovering from a nervous breakdown, it could not be sensibly argued that the cure did not fit the disease. Are we ready now to discount the uncontroverted evidence of the doctor in this case that peace of mind and body (it takes not only mental but physical gymnastics to keep up with two chil-

The only sensible criterion of a "medical expense"—and I think this criterion satisfies Congressional caution without destroying what little humanity remains in the Internal Revenue Code—should be that the taxpayer, in incurring the expense, was guided by a physician's bona fide advice that such a treatment was necessary to the patient's recovery from, or prevention of, a specific ailment.

Indeed, a test for § 23(x) applicability, much akin to the one I have in mind, was adopted by the Tax Court in Havey v. Commissioner, 12 T.C. 409, 412: "In determining allowability, many factors must be considered. Consideration should be accorded the motive or purpose of the taxpayer, but such factor is not alone determinative. To accord it conclusive weight would make nugatory the prohibition against allowing personal, living, or family expenses. Thus also it is important to inquire as to the origin of the expense. Was it incurred at the direction or suggestion of a physician; did the treatment bear directly on the physical condition in question; did the treatment bear such a direct or proximate therapeutic relation to the bodily condition as to justify a reasonable belief the same would be efficacious; was the treatment in proximate time so near to the onset or recurrence of the disease or condition as to make one the true occasion of the other, thus eliminating expense incurred for general, as contrasted with some specific physical improvement."

This taxpayer can, I think, meet every requirement of the Havey test. (1) *Motive:* Ochs could have no motive but his wife's health in sending the children away. They had never attended before—nor have they attended since—private schools. A man earning less than $6,000 with three dependents would not normally send his children to boarding-school. The four-year-old would most likely have stayed home; the six-year-old, if she went to school at all, would have gone to a free public school. Day school and boarding-school were indispensable only because they filled up the children's play and leisure hours—when

they would have harassed their mother. The Commissioner doesn't argue that Ochs chose a more expensive school than he had to; nor even that the wife might have been more economically sent away from home. He does suggest, however, that, since the change benefitted the children as well as the mother, it cannot be considered a medical expense because not incurred solely for the mother's recovery. Congress required only that medical expenses be "primarily" for the patient's recovery. The evidence here, moreover, establishes (and the Tax Court so found) that the effect on the wife's health was the sole consideration inducing her husband's action even if it was not the sole result. (2) *Doctor's advice:* Ochs' action was precipitated by the strong warning of a physician. The doctor predicted that the wife might not recover if the children stayed at home. (3) *Relation between illness and treatment:* The physician advised sending the children away because their presence required vocal exertion on the mother's part—strain and pain in the vulnerable throat region. The advice was aimed to aid the mother's specific throat condition and not just her general well-being or disposition. The physician's warning was certainly ominous enough to instill in the taxpayer a "reasonable belief that the 'treatment' would be efficacious." (4) *Proximity in time of treatment to illness:* The children were sent away as soon as possible after the doctor's advice. They were kept in schools until the five-year danger period of cancer recurrence was over. Then they were brought home, and have never been to private schools since. It is true that the children were kept at home for three years after the cancer operation. But the doctor who counseled their separation was not consulted until 1946, when Mrs. Ochs' lack of improvement became very noticeable.[3]

In the final analysis, the Commissioner, the Tax Court and my colleagues all seem to reject Mr. Ochs' plea because of the nightmarish spectacle of opening the floodgates to cases involving expense for cooks,

dren aged four and six) was essential to recovery from, and prevention of, a throat cancer?

3. See how these tests have been applied in other § 23(x) cases: Usually when such deductions are disallowed, the taxpayers

governesses, baby-sitters, nourishing food, clothing, frigidaires, electric dish-washers—in short, allowances as medical expenses for everything "helpful to a convalescent housewife or to one who is nervous or weak from past illness." I, for one, trust the Commissioner to make short shrift of most such claims.[4] The tests should be: Would the taxpayer, considering his income and his living standard, normally spend money in this way regardless of illness? Has he enjoyed such luxuries or services in the past? Did a competent physician prescribe this specific expense as an indispensable part of the treatment? Has the taxpayer followed the physician's advice in most economical way possible? Are the so-called medical expenses over and above what the patient would have to pay anyway for his living expenses, i. e., room, board, etc? Is the treatment closely geared to a particular condition and not just to the patient's general good health or well-being?

My colleagues are particularly worried about family expenses, traditionally non-deductible, passing as medical expenses.

They would classify the children's schooling here as a family expense, because, they say, it resulted from the loss of the wife's services. I think they are mistaken. The Tax Court specifically found that the children were sent away so they would not bother the wife, and not because there was no one to take care of them. Ochs' expenditures fit into the Congressional test for medical deductions because he was compelled to go to the expense of putting the children away primarily for the benefit of his sick wife. Expenses incurred solely because of the loss of the patient's services and not as a part of his cure are a different thing altogether. Wendell v. Commissioner, 12 T.C. 161, for instance, disallowed a deduction for the salary of a nurse engaged in caring for a healthy infant whose mother had died in childbirth. The case turned on the simple fact that, where there is no patient, there can be no deduction.

Thus, even here, expense attributed solely to the education, at least of the older child, should not be included as a medical expense. See Stringham v. Commissioner, supra.

have failed to prove that the expenses were incurred primarily to alleviate a specific illness of the body or mind, i.e., they have not met the motive-test or the relation-test laid down in Havey.

The majority of § 23(x) cases seems to have dealt, strangely enough, with Florida or Arizona winter vacations. One taxpayer closed up his business after a coronary occlusion and, in effect, retired to Florida. He wanted to deduct his year's rent and payment to a cleaning woman; Brody v. Commissioner, 8 T.C. M. 288. A second taxpayer and his wife took an extended holiday in the sunshine as an aftermath of ulcers and pneumonia; Keller v. Commissioner, 8 T.C.M. 685. Dobkin v. Commissioner, 15 T.C. 886, concerned a heart patient who took annual Florida vacations. Havey v. Commissioner, 12 T.C. 409, involved another heart patient who returned to old vacation haunts in New Jersey and Arizona as late as two years after the attack. All these five taxpayers were halted by the same stumbling block: None of them could show a direct relation between (1) the heart condition or the ulcers and (2) the Florida sunshine. The inference was unavoidable that the patient enjoyed a relief from the cold winds of winter for his general well-being; in some cases,

he might very well have made the trip anyway according to his long-established vacation practices. The Commissioner and the Tax Court, on the other hand, have sanctioned deductions of funds paid for southern exposures in cases where the patients went South for relief from asthma, hay fever, or respiratory infections, i.e., where a direct relation was proved between the southern climate and treatment of the disease. Stringham v. Commissioner, 12 T.C. 580, affirmed 6 Cir., 183 F.2d 579.

One § 23(x) case of disallowance of an alleged medical expense involved the installation of an oil furnace in war-time 1944. The taxpayer had always wanted one, and with the help of his physician's certification that it was bad for his sinuses to stoke a coal furnace, he finally got authorization from the authorities for an oil furnace. "Capital expenditures of permanent benefit to a property, such as is the present item," said the Tax Court, are not deductible as current expenses. "Not every expenditure," it warned, "prescribed by a physician is to be catalogued under this term." Seymour v. Commissioner, 14 T.C. 1111.

4. He has so handled the Florida vacationers and the oil-furnace purchaser. See note 3, supra.

Nor should care of the children during that part of the day when the mother would be away, during the period while she was working part-time. Smith v. Commissioner, 40 B.T.A. 1038, affirmed 2 Cir., 113 F. 2d 114. The same goes for any period when the older child would be away at public school during the day. In so far as the costs of this private schooling are thus allocable, I would limit the deductible expense to the care of the children at the times when they would otherwise be around the mother. If my views prevailed, this might require a remand to the Tax Court for such allocation.

Line-drawing may be difficult here as everywhere, but that is what courts are for. See Lavery v. Purssell, 399 Ch.D. 508, 517: " * * * courts of justice ought not to be puzzled by such old scholastic questions as to where a horse's tail begins and where it ceases. You are obliged to say, this is a horse's tail at some time."