**Bertha M. RODGERS, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15593.**

United States Court of Appeals Eighth Circuit.

March 8, 1957.

---

Thomas E. Toney, Jr., St. Louis, Mo., for petitioner.

Louise Foster, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., with her on the brief), for respondent.

Before JOHNSEN, VAN OOSTER-HOUT and WHITTAKER, Circuit Judges.

JOHNSEN, Circuit Judge.

Some income tax deficiencies, assessed against petitioner for the years 1947, 1949 and 1950, were upheld by the Tax Court, 25 T.C. 254, and the matter is here for review.

The deficiencies were the result of a disallowance by the Commissioner of some deductions claimed by petitioner and her since-deceased husband, in their joint returns for the years involved, as expenditures made for medical care of the husband.

26 U.S.C.A., Int.Rev.Code of 1939, § 23(x), as amended in 1942, 56 Stat. 798, grants a right of deduction from gross income of "Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent specified in section 25(b) (3) * * * to the extent that such expenses exceed 5 per centum of the adjusted gross income".

The section contains this definition of medical care: "The term 'medical care,' as used in this subsection, shall include amounts paid for diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance)."

Section 24(a) (1) of the Code relatedly emphasizes, however, that "no deduction shall in any case be allowed" in re-

spect of "Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23(x)".

The disallowed deductions consisted of amounts paid for transportation, hotels and meals for both the husband and wife, on trips made by them during each of the taxable years, from St. Louis, Missouri, to a southern State in the winter and to a northern State in the summer. The total of these expenditures was $2,480.72 for the year 1947, $2,926.05 for the year 1949, and $2,062.13 for the year 1950.

The Tax Court held that the expenditures were, on the circumstances, setting and history involved, "primarily personal living expenses" rather than medical-care costs, although the taking of the trips had been recommended by the husband's physician.

The husband had been engaged in the oil business in Oklahoma until 1938. He was at that time 62 years of age and decided to retire from his previous activities. He moved with his wife to St. Louis, where they made their home with the wife's sister and brother, in a house which the sister owned. Thereafter, all that he did in the way of business preoccupation was to carry on some trading in stocks and bonds for his wife's and his own account.

The economic situation of the couple in their retired status was such that, according to the tax returns filed by them, they had a net income in the year 1947 of $36,450.40, in the year 1949 of $49,587.96, and in the year 1950 of $60,418.98.

The husband began to make a trip to the south each winter, commencing in 1941. He also took a summer trip during some of the ensuing years. On a number of these seasonal trips, the wife accompanied him and on others she did not. Until 1945, most of the trips so taken by him were for the purpose of escaping the sinus difficulties which he experienced at certain periods of the year in St. Louis.

In 1944, when he was 68 years old, he was diagnosed by a cardiologist as having general arteriosclerosis, which was most markedly affecting the blood vessels of his brain. The physician undertook to do what he could to slow down the aging and deterioration processes, by giving him drugs to control the blood pressure and having him discipline himself by avoiding unnecessary stresses and strains upon the circulatory system, such as those attendant upon the adjustments necessary to be made by the body to substantial variations or extremes of temperature. The physician advised that a stable, equable, warm, but not hot, climate would be of benefit to him in minimizing these climatic temperature stresses and strains and so slowing down the aging process. Because of the nature and degree of the sclerosis, the physician felt that the matter of avoiding temperature fluctuations and extremes was of more importance than in an ordinary case.

Instead of moving to such a generally equable climate, the husband decided to meet the problem of the summer and winter seasons of St. Louis, by going away during those periods of the year. This he was in a position to do, for whatever length of time he chose to do so, by virtue of his retired status, his lack of restraining household and family responsibility, and his economic situation.

By 1947, the arteriosclerosis had progressed to the point where he was subject to spells of dizziness, confusion, amnesia, temporary loss of speech and disorientation, occasioned by the impairment of circulation to the brain, although these incidents did not reach the state of fainting spells or loss of consciousness. His physician recommended, however, that he should not go about or drive his car, unless someone was with him. It was on the basis of this recommendation that deductibility was claimed of the traveling and living expenses of the wife on the trips which they made in 1947, 1949, and 1950. As has been mentioned, most of the previous trips which had been taken were made together.

■ The Tax Court duly recognized that it is possible for the costs of trips

from taxpayers' homes to a more favorable climate, involving health considerations, to constitute, under extraordinary circumstances, expenses for medical care within the purview of the statute. But, as it pointed out, such expenses normally also are related to factors and equations of personal life and situation that leave them without the persuading certainty and undubious objectivity necessary to a tax deduction. In the language of Stringham v. Commissioner, 12 T.C. 580, affirmed Commissioner of Internal Revenue v. Stringham, 6 Cir., 183 F.2d 579 —quoted by the Tax Court here—such general travel costs "may only in rare situations lose their identity as ordinary personal expenses and acquire deductibility as amounts claimed primarily for the prevention or alleviation of disease". See also Havey v. Commissioner, 12 T.C. 409; Dobkin v. Commissioner, 15 T.C. 886; Ochs v. Commissioner, 17 T.C. 130, affirmed 2 Cir., 195 F.2d 692, 37 A.L.R.2d 545; Hoffman v. Commissioner, 17 T.C. 1380.

■ S.Rep. No. 1631, 77th Cong., 2d Sess. pp. 95–96 (1942–2 Cum.Bull. 504, 576–577) pointed out as to the statute that "It is not intended * * * that a deduction should be allowed for any expense that is not incurred primarily for the prevention or alleviation of a physical or mental defect or illness." On this declared intention, and the definition of medical care set out in § 23(x), supra, read in relation to the term "extraordinary" used in § 24(a) (1), we think that the Tax Court properly would be entitled to regard general trips taken by taxpayers to a more salubrious climate, in escape from unfavorable weather seasons of their home localities, as not constituting deductible medical care for tax purposes, merely because the trips had been recommended by a physician and were capable of being of general benefit to health.

■ Similarly, it seems to us, would the Tax Court ordinarily be entitled to regard the costs of trips, taken by taxpayers to diminish the discomfort or to stay the operativeness, during a period of temporary sojourn, of some chronic condition, such as arthritis, high blood pressure, respiratory difficulty or sinus trouble, but serving at the same time as an opportunity for vacation pleasure or resort enjoyment, as primarily constituting personal rather than medical expenses.

And even with more reason, in our opinion, could the costs of trips taken periodically by a taxpayer to a more salubrious climate, because of some seasonal unfavorableness in the climate of his home, be regarded as not involving such extraordinariness of fact and circumstance as would lift these costs from the status of living expenses to medical care, where the trips had become such a regular incident as to amount controllingly to a choice by the taxpayer in his mode of life. As the Tax Court said of the present situation, "where the taxpayer chooses for purely personal considerations to travel during a large part of the year for the remainder of his life rather than living in a locality having a climate suited to his health throughout the year, the cost of traveling to and living in a salubrious climate may be primarily a personal expense".

■ Of course, each such situation must be appraised and made to turn on its individual facts and circumstances. Commissioner of Internal Revenue v. Stringham, 6 Cir., 183 F.2d 579. Thus, the ultimate determination in a case of this character ordinarily rests to a substantial degree on a scrutinizing, resolving and balancing of the established and inferential facts.

■ Here, the Tax Court evaluated the question of extraordinariness in relation to the circumstances of the husband's retired status; the nature of his physical condition; his lack of business, home or family responsibilities requiring him to remain in St. Louis; his economic independence which left him free to travel without sacrifice whenever he chose to do so; the number of years that he had engaged in making such trips and their frequency and regularity; and the

manifestness of the reality that he had elected to fit such trips in their general benefits into his remaining life, as part of his permanent routine or mode of living, rather than undertaking to move to a naturally more favorable climate for his aging condition—as many, if not most, persons in his circumstances normally would have done.

On the whole situation, we cannot say that the determination which the Tax Court made was clearly erroneous. Indeed, on the facts and circumstances, we believe that it was the correct one as well.

The result reached leaves no room for the other contentions and arguments which have been made.

Affirmed.