SCHUYLER VAN VECHTEN, JR. and ANN S. VAN VECHTEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Vechten v. Commissioner
Docket Nos. 2971-72, 3526-72
United States Tax Court
T.C. Memo 1973-282; 1973 Tax Ct. Memo LEXIS 1; 32 T.C.M. (CCH) 1363; T.C.M. (RIA) 73282; December 27, 1973, Filed. Arthur L. Nims, III, for the petitioners. Kenneth G. Gordon, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent originally determined deficiencies in petitioners' 1968 and 1969 income taxes of $7,969.14 and $8,514.93, respectively. By amended answer respondent claimed an additional deficiency in 1969 of $2,359.10. The parties have resolved all but one issue, namely, whether all or any part of the salary paid a full-time, live-in domestic during the years 1968 and 1969 is deductible under section 213 [1] as an amount paid for the cure, mitigation, treatment 2 or prevention of disease, *2 or for the purpose of affecting any structure or function of the body. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife and resided in Rumson, New Jersey, at the time they filed their petitions herein. They filed joint Federal income tax returns for 1968 and 1969 with the district director in Newark, New Jersey. During 1968 and 1969 petitioners employed Hattie Parker (hereinafter "Hattie") as a full-time, live-in maid at an annual compensation of $6,410.
Petitioners were married in 1950 and have three children who were born in 1954, 1956 and 1959. In 1958 petitioner Ann Van Vechten (hereinafter "Ann") began to suffer from an acute psychotic reaction of a schizophrenic type, characterized by hyperexcitability, hyperactivity, delusions and agressive behavior. Because of this disorder, she was admitted to the Payne Whitney Psychiatric Clinic of the New York Hospital. She remained hospitalized for approximately four and one-half months, during which time she was treated by a resident psychiatrist, Dr. Ann *3 Shuttleworth. At the time of Ann's discharge to her husband's care, Dr. Shuttleworth suggested that petitioners hire someone to take over all household duties. However, Ann's release was not predicated or conditioned on obtaining such help. Petitioner Schuyler Van Vechten (hereinafter "Schuyler") approached 3 Hattie, but she was unable to leave the job she then held. Other assistance was obtained until Hattie was able to go to work for petitioners six months later. Since then, except for a short period of time during 1962, Hattie has been with petitioners as a full-time, live-in domestic. In July 1962 Ann resumed treatment as a patient of Dr. Shuttleworth, and has been under her care since that time. From 1962 to 1965 she saw Dr. Shuttleworth weekly, but in 1965 Ann developed some resistance to therapy and curtailed her visits. In 1966 the weekly visits were resumed, but these visits were again curtailed by Ann in 1967. This curtailment coincided with a change in pathology characterized by a marked increase in alcohol consumption. This in turn has produced liver damage. From that time until the present, Ann has been a residual schizophrenic and an alcoholic. She has *4 difficulty coping with reality and assuming responsibility. Despite her illness, Ann is not totally unable to function. She is able to travel by herself and to keep appointments. She is also able to go shopping for clothes by herself, although generally she is accompanied by one of her daughters. She was able to work mornings at a bookstore which was owned by her husband and operated by her parents. In 1968 she was able to accompany her husband to Europe on a business trip, where she was present during discussions at certain business dinners. She has also accompanied her husband on several overnight domestic business trips. 4 Hattie's duties are extensive. She prepares the meals, cleans the 12-room home, cares for the three children, does the laundry and ironing, changes the linen, and always stays home at night with Ann when Schuyler is away on business. However, Hattie has no formal medical training, does not administer any medication to Ann, and does not attempt to prevent Ann from drinking. Prior to the onset of Ann's illness in 1958, petitioners employed domestic help one day a week. OPINION Petitioners contend that amounts expended for a full-time household *5 employee whose services create an environment in which Ann's mental illness is mitigated and alleviated are sums expended for the purpose of affecting a structure or function of the body and are a medical expense deductible under section 213. [2] Respondent argues that the cost of a full-time, 5 live-in maid is a nondeductible personal expense under section 262, [3] and not a deductible "medical care" expense within the meaning of section 213. *6 We hold that Hattie's compensation is not a deductible medical expense because (a) she performs no medical services for Ann, (b) it has not been shown that but for her presence Ann would have to remain institutionalized, and (c) we conclude that although Hattie alleviated Ann's anxieties and suffering by relieving her of home-connected responsibilities, her services benefited all family members and were made necessary by the loss of Ann's services to the family, and as such are personal expenses and not deductible medical care expenses. Ann is a residual schizophrenic with alcoholism which is exemplified by an inability to cope with real situations. Hattie 6 has complete control and charge of the everyday management of petitioners' household, including preparing meals, cleaning, caring for the children, and generally being available in case any needs arise in the care of Ann. Hattie's services also alleviate, mitigate and probably prevent further deterioration in Ann's condition and mental state, and enable Ann to cope with this illness and lead a more "normal" existence. Hattie is vital to the organization of the household and without her Ann might well again reach a destructive *7 level of depression and alcoholism. On the other hand, Hattie has no medical training. She was not hired to render medical services to Ann and did not do so. When Ann was ill, Hattie would render no medical services to her, but instead would seek medical assistance for her. Hattie was not supposed to prevent Ann's drinking nor in fact did she ever try to do so. Hattie's function was that of housekeeper. In this regard the facts in the instant case resemble the facts in Borgmann v. Commissioner, 438 F.2d 1211 (C.A. 9, 1971), affirming per curiam a Memorandum Opinion of the Court. In that case the taxpayer, who lived alone, had suffered a serious heart attack. After he recovered sufficiently to return to work, his doctor advised him to employ a live-in domestic for the dual purposes of seeking medical assistance should the occasion arise and helping relieve him of some household chores. He hired a domestic whose duties consisted of "making the beds, tidying the house, cooking, and occasionally doing the laundry. On one occasion, 7 she had summoned [taxpayer's] doctor for an emergency call to the home." 438 F.2d at 1212. To perform these functions *8 she did not require medical training or skills. According to the Ninth Circuit, the Tax Court had correctly held that although the domestic's functions were vital to taxpayer in that it relieved taxpayer from chores which would have overtaxed his weak heart, these functions "did not bear such a direct and proximate therapeutic relation to some physical or mental function or structure of the body as to constitute a deductible medical expense." Id. We agree with petitioners that there is no requirement that to be deductible under section 213 the compensation for services rendered must be paid to a person trained in medical work ( George B. Wendell, 12 T.C. 161 (1949)), but "the determination of what is medical care depends on the nature of the services rendered, not on the experience, qualifications, or title of the persons rendering them." Rev. Rul. 70-170, 1970-1 C.B. 51, 52. Hattie performed no medical services for Ann. Second, petitioners have not proven that but for Hattie's presence and functions, Ann would have had to remain institutionalized. Had petitioners established this fact, then the cost of providing a substitute for hospital care for Ann *9 would be a deductible medical expense. [4] 8 Finally, we hold that although Hattie was hired to alleviate Ann's anxieties and suffering, her services benefited all family members and were in part made necessary by the loss of Ann's services to the family, and as such are personal expenses and not deductible medical care expenses. Concededly the line between medical care expense and personal expense in this factual context is very difficult to draw. Hattie was hired at the suggestion of Dr. Shuttleworth, but Ann's release from the Payne Whitney Psychiatric Clinic was not conditioned on petitioners' obtaining a live-in domestic. Both Dr. Shuttleworth and Schuyler testified that Hattie's relieving Ann of all household responsibilities reduced Ann's anxieties and suffering. On the other hand, prior to her illness Ann had cared for her family and home with the aid of domestic help one day a week, and afterwards Hattie *10 was hired to perform all domestic services because, owing to Ann's illness, she no longer could do them. We hold that Hattie's compensation is a personal and nondeductible expense because it was made necessary by the loss of the wife's services, and the fact that the wife also benefited is not sufficient reason to allow them as a medical expense. Ochs v. Commissioner, 195 F.2d 692 (C.A. 2, 1952), affirming 17 T.C. 130 (1951), certiorari denied 344 U.S. 827 (1952). See McVicker v. United States, 194 9 F. Supp. 607 (S.D. Cal., 1961). Cf. George B. Wendell, supra. Petitioners' reliance on Rev. Rul. 69-499, 1969-2 C.B. 39, is misplaced. This Ruling concluded that sums expended to maintain a mentally retarded child in a specially selected home to aid his adjustment from life in a mental hospital to life in the community, as recommended by the child's psychiatrist, were deductible medical expenses. While it is true that this ruling does recognize the legitimate medical value of a controlled environment, it does not stand for the proposition that the compensation paid Hattie to relieve Ann of all her household responsibilities, *11 which must be undertaken in any event and benefit all family members, is a deductible medical expense. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect in the years in issue. ↩
2. Section 213 provides in part: (a) Allowance of Deduction. - There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise - (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents * * * exceeds 3 percent of the adjusted gross income * * *. * * * (e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * *. ↩
3. Section 262 provides: Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
4. See Walter D. Bye, T.C. Memo. 1972-57↩, where this Court allowed a medical expense deduction for nonprofessional "custodial care" which was the "prescribed alternative to the continued maintenance of [petitioner's wife] in the State hospital."