JILL FORD MURRAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Murray v. Commissioner
Docket No. 17481-79.
United States Tax Court
T.C. Memo 1982-269; 1982 Tax Ct. Memo LEXIS 479; 43 T.C.M. (CCH) 1377; T.C.M. (RIA) 82269; May 17, 1982. David Sachs, for the petitioner. Adeline P. Malone, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in petitioner's Federal income taxes for the year 1975 in the amount of $ 3,177. The issue for decision is whether assorted expenditures in the total amount of $ 5,600 are deductible medical expenses, within the meaning of section 213. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference. Petitioner Jill Ford Murray resided at Phoenix, Arizona, at the time of the filing of her petition. *480 Petitioner, an unmarried individual, rented an apartment in New York City during 1974 and 1975 and considered that apartment to be her residence during those years. On her Form 1040 for 1975, petitioner reported income primarily from three sources: dividends, alimony and trust distributions. She reported no income from wages or salaries that year and apparently engaged in no gainful employment during that period. In 1974 and 1975 petitioner was under the medical care of Dr. John Prutting, a New York internist, for idiopathic edema (excess fluid retention from an unknown cause), hypometabolism (an underactive metabolism), hypotension (low blood pressure) and hypothyroidism (an underactive thyroid resulting in weight gain and loss of vigor). For these conditions, Dr. Prutting prescribed medication (given both orally and by injection), a low-calorie, low-sodium diet and exercise. Early in 1974, petitioner, on the recommendation of Dr. Prutting, traveled from New York to California to stay at the Bermuda Inn, a spa. At the Bermuda Inn, petitioner met Dr. Harold Stark, a California internist, who was medical director there. After a stay of indeterminate length, petitioner *481 returned to New York. On October 4, 1974, petitioner once again traveled to California to stay at the Bermuda Inn. Petitioner stayed there through November 29, 1974, when she traveled to Murrieta, California, to stay at another spa, Murrieta Hot Springs. On December 23, 1974, petitioner left Murrieta Hot Springs and traveled to Lancaster, California, where Dr. Stark was then located. Dr. Stark treated petitioner at his offices in Lancaster daily on an outpatient basis for her hypometabolism and idiopathic edema. While in Lancaster, petitioner stayed at the Ramada Inn until January 4, 1975, incurring lodging expenses of $ 64. Thereafter petitioner stayed with friends in the area, returning to New York from Los Angeles on January 12, 1975. Petitioner's airfare from Los Angeles to New York on January 12, 1975, cost $ 194.37. Ground transportation and porter expenses in connection with the flight amounted to $ 59. On May 14, 1975, petitioner again flew from New York to Los Angeles at a cost of $ 146.37 for airfare and $ 41 of ground transportation and porter expenses. From May 25, 1975 to November 4, 1975, petitioner rented a three-bedroom furnished apartment at Desert *482 Garden Apartments in Lancaster, California, on a weekly basis for total rental payments of $ 1,955. During this period in Lancaster, the petitioner was again under care of Dr. Stark and made 84 office visits to that physician for treatments of her various conditions. On November 1, 1975, Dr. Stark referred the petitioner to Dr. R. Philip Smith, Medical Director, La Costa Spa, Rancho La Costa, Carlsbad, California, for "reduction therapy." On November 4, 1975, petitioner paid costs of $ 55 for transportation from Lancaster, California, to the La Costa Spa. While at La Costa Spa, from November 4, 1975, to December 4, 1975, petitioner visited a doctor weekly (a total of five times). She participated in six exercise classes daily, took massages and saunas, took supervised walks and ate a low-calorie, low-sodium diet. During her time at this spa, petitioner also took Cytomel for her thyroid; Lasix, a diuretic; Kylite, a potassium supplement to offset the possible ill effects of the diuretic; pills to help her sleep; and, occasionally, a mild tranquilizer. Petitioner had taken each of these medications prior to attending La Costa Spa while under the care of Dr. Stark. Upon her *483 arrival at the spa, petitioner weighed 142-3/4 pounds and her blood pressure was 120/80. Upon her departure from the spa one month later, petitioner weighed 132 pounds and her blood pressure was 126/78. Petitioner paid a basic rate of $ 100 a day, plus $ 6.37 tax, during her stay at La Costa, for a total cost of $ 3,085 (29 days). This rate included petitioner's meals, lodgings and therapy. On her 1975 income tax returns, petitioner deducted $ 8,270 as medical and dental expenses (other than drugs and insurance). In his statutory notice of deficiency, respondent allowed $ 2,670 of these deductions, including the cost of the 84 office visits petitioner made to Dr. Stark in 1975. Respondent disallowed, however, the following deductions claimed by petitioner as not meeting the requirements of section 213: 1) the $ 64 paid by petitioner for lodgings at the Ramada Inn in Lancaster, California, on January 5, 1975, 2) the $ 253.37 of air and ground transportation expenses incurred by petitioner on her return to New York from Los Angeles on January 12, 1975, 3) the $ 187.37 of air and ground transportation expenses incurred by petitioner on her travel from New York to Los Angeles *484 on May 14, 1975, 4) the $ 1,955 of rent paid by petitioner for her lodgings at the Desert Garden Apartments in Lancaster between May and November, 1975, 5) the $ 55 of transportation expenses incurred by petitioner in traveling from Lancaster to the La Costa Spa on November 4, 1975, and 6) the $ 3,085 paid by petitioner to La Costa Spa for her 29-day stay at that facility. OPINION This case involves respondent's disallowance of various medical expense deductions claimed by petitioner, which for purposes of analysis may be grouped as follows: 1) food, lodging and therapy at La Costa Spa ($ 3,085), 2) transportation expenses to and from places where treatment was received ($ 253.37, Los Angeles to New York on January 12, 1975; $ 187.37, New York to Los Angeles on May 14, 1975; $ 55, Lancaster to La Costa Spa on November 4, 1975) and 3) lodging expenses incurred by petitioner to be near Dr. Stark ($ 64, Ramada Inn, January 5, 1975; $ 1,955, Desert Garden Apartments, May-November, 1975). La Costa Spa Deduction
Section 213 provides a deduction for certain medical care paid for by a taxpayer but not compensated for by insurance. Deductions for expenditures for medical care *485 allowable under section 213, however, are confined strictly to expenses incurred "primarily for the prevention or alleviation of a physical or mental defect or illness." Section 1.213-1(e)(1)(ii), Income Tax Regs.
"Medical care" under section 213(e)(1) includes amounts paid (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, [or] (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), * * *. "Medical care" does not include expenditures for things which are merely beneficial to the general health of an individual, such as an expenditure for a vacation (section 1.213-1(e)(1)(ii), Income Tax Regs.) or trips to resort areas that bear little relation to the treatment of the taxpayer's specific disorders and which are taken for largely personal reasons. Rodgers v. Commissioner,25 T.C. 254 (1955), affd. 241 F.2d 552 (8th Cir. 1957); Havey v. Commissioner,12 T.C. 409 (1949). In a similar vein, we have held that expenses paid to an exercise gym by an individual seeking only general improvement *486 of his health, even when recommended by a physician, are not deductible medical expenses. Peacock v. Commissioner,T.C. Memo. 1978-30. In our opinion, petitioner has simply not shown that her stay at La Costa Spa was "primarily for the prevention or alleviation of a physical or mental defect or illness." Section 1.213-1(e)(1)(ii), Income Tax Regs.
As far as we are able to glean from this record, since Dr. Stark did not testify, he recommended petitioner to La Costa solely for "reduction therapy" -- i.e. supervised exercising and dieting. He did not advise her to go there because doctors there would treat her with different drugs or medications. In fact, while at La Costa, petitioner continued to take the same medications for her idiopathic edema, hypometabolism, hypotension and hypothyroid that she did while under the care of Dr. Stark. She could have ingested these pills anywhere. The primary reason petitioner went to La Costa was to lose weight. Petitioner entered La Costa at a weight of 142-3/4 pounds and left the spa 29 days later sans 10-3/4 pounds. While exercising and dieting are certainly laudible activities -- one might even say culturally compelled *487 activities in current American society -- they simply are not the sorts of activities which entitle a taxpayer to a medical deduction absent extraordinary circumstances. The expenses paid by petitioner at the La Costa Spa were almost exclusively expenses to promote her general well-being and are, except as noted below, not deductible. The only costs of petitioner's stay at La Costa which are arguably deductible are the excess cost of the low-sodium meals over the cost of ordinary meals (see Randolph v. Commissioner,67 T.C. 481 (1976); Cohn v. Commissioner,38 T.C. 387 (1962)) and the costs of petitioner's five visits to the spa's doctor. Petitioner has introduced no evidence that the spa charged extra for serving low-sodium meals; accordingly, petitioner is entitled to no medical deduction on that account. The cost of a weekly visit to the spa's doctor was not separately charged, but was included in the $ 106.37 per day rate paid by petitioner. These visits were apparently little more than general examinations; under the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), we hold that petitioner is entitled to a medical *488 deduction of $ 250, total, for such visits. The remainder of the $ 3,085 paid to La Costa Spa is not a deductible medical expense. Transportation Expenses
Section 213(e)(1)(B) allows taxpayers a medical deduction for transportation "primarily for and essential to" the rendition of medical care. Section 1.213-1(e)(1) (iv), Income Tax Regs.
Petitioner claims the following transportation expenses as medical deductions: $ 253.37 for the cost of flying from Los Angeles to New York on January 12, 1975, $ 187.37 for the cost of flying from New York to Los Angeles on May 14, 1975, and $ 55 for the cost of traveling from Lancaster to La Costa Spa. In regard to the $ 55 item, we have found that petitioner's reasons for going to the La Costa Spa were primarily personal. In comparison to the dieting and exercising petitioner engaged in at La Costa, the rendition of doctors' services there was of rather minimal importance. Accordingly, we hold that the $ 55 paid by petitioner to travel to La Costa was not an expenditure "primarily for and essential to" the rendition of medical care and is therefore nondeductible. The $ 253.37 item is a return fare from Los Angeles to New York, *489 where petitioner maintained an apartment and saw a doctor, Dr. Prutting, during 1974 and 1975. In 1974, Dr. Prutting had recommended to petitioner that she go to a spa in California, the Bermuda Inn, where petitioner apparently engaged in the same sort of dieting and exercising that she later did at La Costa. Petitioner did not explain what Dr. Prutting hoped she would get out of going to the Bermuda Inn. [2] Dr. Prutting had been treating petitioner for her various medical conditions in New York. There is no evidence that he sent petitioner to California because she could obtain treatment there that he could not give her in New York. [3] Nor is there any evidence that the California climate would be in any way more beneficial to petitioner's medical conditions than the New York climate. Havey v. Commissioner,supra at 412. We do not even understand petitioner to argue that she could not find a health spa at which to diet and exercise in New York. *490 We think a sentence from the regulations under section 213 speaks directly to petitioner's situation: If a doctor prescribes an operation or other medical care, and the taxpayer chooses for purely personal considerations to travel to another locality (such as a resort area) for the operation or the other medical care, neither the cost of transportation nor the cost of meals and lodging (except where paid as part of a hospital bill) is deductible.[Section 1.213-1(e)(iv), Income Tax Regs.] As we view the facts, petitioner spent much of 1974 and 1975 traveling, calling at doctors' offices [4] from time to time and visiting friends (some of whom lived in the Lancaster, California, area) and spas. Under such circumstances we hold that petitioner's motives for traveling to California in late 1974 and returning from California on January 12, 1975, were primarily personal and not "primarily for and essential to" the treatment of her medical conditions. Accordingly, the $ 253.37 expended by petitioner on January 12, 1975, for transportation is not a deductible medical expense. *491 Similarly, the $ 187.37 paid by petitioner to fly from New York to Los Angeles on May 14, 1975, is not a deductible medical expense. Petitioner argues that this $ 187.37 expense was incurred by her to travel to her doctor, Dr. Stark, and cites Winderman v. Commissioner,32 T.C. 1197 (1959). In Winderman, a taxpayer was allowed a medical deduction for expenses incurred in traveling once a year from Los Angeles to New York in order to get a thorough physical examination and to consult with a physician in whom he had more confidence than his physician in Los Angeles. While in New York, the taxpayer engaged in numerous minor social and recreational activities, which the court found were "distinctly secondary to his medical visits." We do not think Winderman is dispositive of this case. In the instant case we are not convinced petitioner's primary reason for her May, 1975, trip was to be treated by Dr. Stark. At trial, petitioner admitted that she stayed part of January, 1975, in Lancaster, California, with friends. Visiting with friends and experiencing the less hurried life of Lancaster, we think, were the major reasons for petitioner's travel to that *492 locality later in that year. As we see it, petitioner merely went to Dr. Prutting when she stayed in New York City and went to Dr. Stark when she stayed in Lancaster. She retained equal confidence in both doctors and traveled for reasons other than receiving superior medical care from one or the other. The trip from New York to Los Angeles on May 14, 1975, was thus not incurred "primarily for and essential to medical care," and the $ 187.37 paid for the trip was not deductible. Lodging Expenses
In general, lodging expenses are not deductible as medical expenses under section 213. Commissioner v. Bilder,369 U.S. 499, 502 (1962). The regulations under section 213, however, provide an exception to this rule in the case of lodging expenses resulting from inpatient hospital care and medical care provided in institutions other than hospitals. Section 1.213-1(e)(1)(v), Income Tax Regs. Additionally, in other unusual circumstances courts sometimes allow the deduction of lodging expenses as medical expenses even where the taxpayer is not staying overnight at a hospital or other institution regularly providing medical care; see, e.g., Kelly v. Commissioner,440 F.2d 307 (7th Cir. 1971), *493 revg. a Memorandum Opinion of this Court (hotel room expenses deductible when taxpayer, convalescing from appendectomy, was forced to move out of hospital due to shortage of room in hospital and taxpayer continued to be nursed in hotel room); [5] but in such cases deductibility turns in large part on the condition of the patient and the nature of medical services rendered in the alternative lodgings. Volwiler v. Commissioner,57 T.C. 367, 371 (1971) (expenses of boarding house and apartment not specially equipped and in which no medical treatment or supervision occurred not deductible). Petitioner claims lodging medical expense deductions of $ 64 for a brief stay at the Ramada Inn in Lancaster, near Dr. Stark, in January, 1975, and $ 1,955 for renting a three-bedroom apartment in Lancaster at the Desert Garden Apartments between May and November, 1975. Petitioner contends the claimed expenses are deductible because these rooms were retained so that she could obtain Dr. Stark's *494 outpatient treatments. We think there are two reasons why these lodgings expenses must be disallowed as medical expenses: First, we are not persuaded that petitioner's primary reason for incurring lodging expenses in Lancaster either in January or May-November, 1975, was medical. See discussion under Transportation Expenses,supra. Secondly, no medical treatment by Dr. Stark occurred in petitioner's rooms; all treatments occurred at Dr. Stark's offices. Volwiler v. Commissioner,supra.Consequently the lodging expenses were of an entirely personal character. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year before the Court.↩
2. Dr. Prutting neither testified nor gave a deposition in this case, although his office was located in New York City, where this case was tried. ↩
3. We note that Dr. Stark, the medical director of Bermuda Inn, was in the same field of medical specialty as Dr. Prutting, internal medicine. It is not evident from the record that Dr. Stark treated petitioner with any different medications or with any greater degree of expertise than Dr. Prutting had in New York.↩
4. We note that from May to November 1975, petitioner made 84 visits to Dr. Stark's offices in Lancaster.↩
5. See also Ungar v. Commissioner,T.C. Memo. 1963-159↩ (apartment room specially equipped for nursing care to woman who suffered cerebral hemorrhage; rent deductible).